(38 South. 882.)

Nos. 15,573, 15,676.

BARTLETT et al. v. FOURTON et al.

(June 5, 1905.)

CORPORATIONS—ELECTION OF DIRECTORS—PETITION TO SET ASIDE—SALE OF STOCK—OPTION OF CORPORATION—WAIVER—STOCKHOLDERS—VOTING CAPACITY—RECEIVERS.

1. A petition by a small minority of apparently defeated candidates, seeking to set aside an election—in which they have participated, though under protest—of directors of a business corporation, for alleged illegalities and irregularities, such as the holding of the election in a place other than the office, failure to give notice by publication, and the appointment of commissioners by the president instead of the board of directors, discloses no cause of action, when it is not alleged that the corporation has any office, or that any stockholder has been deprived of his vote or of any other substantial right, and the allegation of protest is not accompanied by an allegation of injury resulting from the matters protested against.

2. Conceding (arguendo, only) that a provision in the charter of a Louisiana corporation giving to such corporation a preference in the matter of buying its own stock can be sustained, such provision nevertheless inures to the benefit of the corporation, and cannot be invoked by an individual stockholder merely upon the ground that persons who have acquired stock, which was not first offered to the corporation, did so for the purpose of controlling the corporation, since stock may be legitimately

acquired for that purpose; nor can it be invoked by the corporation after the transfer of the stock, since, in permitting the transfer to the person acquiring, the corporation waives whatever right of preference it might have.

3. The charter of a business corporation may regulate the voting capacity of its shareholders, and where such capacity is determined by the number of shares held, coupled with a provision that no individual shall hold more than a certain number, the voting capacity is limited to that number, and the provision cannot be evaded by holding and voting stock through a person interposed.

4. The effect of appointing a receiver being to take the property of a corporation out of the control of the officers selected by the shareholders, the courts should proceed with extreme caution, and the statute authorizing such appointment should be strictly construed.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by T. J. Bartlett and others, as stockholders of the Young Men's Real Estate Improvement Company, Limited, against H. C. Fourton and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Theodore Cotonio, for appellants. Charles Ferdinand Claiborne and Dart & Kernan, for appellees.

### Statement.

MONROE, J. Talbot J. Bartlett, Henry L. Nick, and Theodore Cotonio bring this suit as stockholders of the Young Men's Real Estate Improvement Company, Limited (the two first mentioned as candidates claiming to have been elected members of the board of directors of the company), and allege, in substance, as follows, to wit:

That said company was incorporated in 1891, is domiciled in New Orleans, and owns property exceeding $10,000 in value, and that petitioners are stockholders therein; that, according to the charter, the board of directors is to consist of nine stockholders, elected by ballot on the third Tuesday in November of each year, at elections to be held under the supervision of three commissioners appointed by the pre-existing board, of which elections, 10 days' notice is to be given by publication in a daily newspaper selected by said board, and that no election has been held as thus required.

"That H. C. Fourton, and others associated with him, claiming to be stockholders," attempted to hold an election on the third Tuesday in November, 1904, at the Grand Opera House, in this city, though said opera house is not the office of the company, and no commissioners had been appointed and no notice given as required by the charter of the company.

That, in spite of petitioners' protest, R. H. Pollock, E. A. Neugass, and Hart D. Newman acted, under the appointment of said Fourton, claiming to be president, as commissioners of said election, and that the following named persons voted the stock mentioned in connection with their names, to-wit: D. H. March, 40 shares; J. O. Hans, 50 shares; R. L. Pollock, 50 shares; E. A. Neugass, 36 shares; and Hart D. Newman, 50 shares—voting in person; and Charles de B. Claiborne, 5 shares; James Thibaut, 50 shares; Eugene Chassanoil, 50 shares; C. M. Smith, 50 shares; F. J. Eldridge, 5 shares; P. M. Schneidau, 5 shares; O. A. Schneidau, 5 shares; M. D. Gardner, 2 shares; L. De Fuentes, 5 shares; E. Claudel, 2 shares; Wm. H. Heyl, 14 shares; Dave Liberman, 2 shares; Simeon Emanuel, 50 shares; Leon N. Neugass, 50 shares; Moses Hollander, 24 shares; S. J. Schwartz, 50 shares; C. M. Morales, 50 shares; Leonard Stern, 50 shares —voting by proxy; and that said persons were not bona fide stockholders, but had acquired the stock so voted in violation of the charter of the company, and particularly of article 5, which provides that:

"All stock shall be transferred on the books of this corporation by the stockholders in person or by power of attorney. No stockholder shall be allowed to sell or transfer his share, or shares, of stock in this corporation without, first, offering the same to the company, through its president or vice president. If the company fails to purchase the stock so offered, at its market value, within three days from such offer, then, the stockholder desiring to dispose

of his stock may sell and transfer the same. All the stock so purchased by the company may be reissued by it. And no person can subscribe to, or hold more than fifty shares of said stock, in his individual name."

That moreover Hart D. Newman, who, as proxy, voted the stock in the name of James Thibaut, Eugene Chassanoil, C. M. Smith, F. J. Eldridge, P. M. Schneidau, O. A. Schneidau, M. D. Gardner, L. De Fuentes, E. Claudel, W. H. Heyl, Dave Liberman, Simeon Emanuel, Leon Neugass, Moses Hollander, S. J. Schwartz, C. M. Morales, and Leonard Stern, was without authority so to do, for the reasons, that he was acting as a commissioner, and that the proxies of said persons were made in favor of Wm. H. Heyl, who was not present, and contained no power of substitution. Petitioners further allege that the votes thus mentioned were cast in favor of H. C. Fourton, D. H. March, James Thibaut, C. B. Stroudbach, E. A. Neugass, John O. Hans, M. D. Gardner, Wm. H. Heyl, and Simeon Emanuel, to constitute the board of directors of the company, and that thereafter petitioners, with reservation of all their objections, for themselves and as proxies of other stockholders, cast 214 votes for T. J. Bartlett, Chas. W. Stumpf, W. J. Morgan, E. Dusse, Chas. G. Peter, M. Picheloup, L. A. Livaudais, Jr., Nathan Levy, and Theodore Cotonio, to constitute said board, and that, if said election had been legally conducted, the persons so voted for by petitioners would have been elected.

That "H. C. Fourton and his associates * * * have carried the election for board of directors * * * for several years past in like manner, and thus illegally taken control of the affairs of said corporation. That they have illegally issued to themselves shares of stock, * * * so as to have a majority of the stock, * * * placing blocks of fifty shares each in the names of persons who have no real interest, * * * in order to circumvent the prohibition in said charter. * * * That said H. C. Four-

ton and his associates have purchased stock in said corporation, well knowing that the same had not been previously offered to the corporation, as required by the charter, and they have, in addition thereto, leased the corporate property for their own individual benefit and advantage, and not for the interest of all of the stockholders, and managing [?] the corporate property to the prejudice and injury of petitioners and all other stockholders similarly situated, and that it is necessary that a temporary receiver should be appointed for said corporation." They therefore pray that the parties said to have been elected directors, as also the company, through its acting president, be cited, and that there be judgment decreeing that said parties do not legally constitute the board of directors, and that said board is constituted of the persons for whom petitioners voted, or, in the alternative, that the election so attempted to be held by said Fourton and his associates be declared null and void, and that a new election be ordered by the court, and held, under the supervision of three commissioners to be appointed by the court, at such time and place and after such notice as the court may direct, and that said commissioners be instructed not to receive votes for any shares standing in the names of said Fourton, Claiborne, March, Hans, Pollock, Neugass, Chassanoil, Stroudbach, Smith, Heyl, Emanuel, Newman, Hollander, Schwartz, Morales, and Stern, or for any other shares which have been acquired in violation of article fifth of the charter of the company. And they further pray that the defendants be ordered to show cause why a temporary receiver should not be appointed to take charge of and administer the affairs of the company until a legal board of directors shall have been elected and organized.

The defendants excepted on the ground that the allegations of the petition disclosed no cause of action, either as to the incidental

or the ultimate relief sought; and, the exceptions having been maintained, by separate judgments, denying the application for the appointment of the receiver and dismissing the suit, the plaintiffs have appealed, and the two appeals have been, by consent, consolidated.

### Opinion.

It will be observed from the foregoing statement that, for the nine candidates alleged by plaintiffs to have been elected directors, 214 votes are said to have been cast, whilst for their opponents it is admitted by plaintiffs that 226 votes (plus Fourton's votes, the number of which is not given) were cast by the holders of the stock in person. We may therefore eliminate, as immaterial to the result, the votes cast by proxy. It will also be observed that, of the nine candidates mentioned, only two are here complaining; the remaining seven having apparently acquiesced, with the body of the stockholders, in the election of the defendants.

It is said that the election was illegal, because (1) held at a place other than the office of the company; (2) because notice by publication, as required by the charter, was not given; (3) because the commissioners of election were appointed by the president, and not by the board of directors; (4) because the persons who cast the majority of the votes were not bona fide stockholders, for the reason that the shares acquired by them had not been first offered to the company.

The three objections first mentioned are met by the fact that it is nowhere alleged that the company had any office, or that any stockholder was deprived of his vote or of any other right by reason of the matters objected to, taken in connection with the additional fact that the plaintiffs participated in the election. It is true that it is alleged that their participation was under protest, and, if the allegation of protest were accompanied by an allegation of injury, resulting from the thing protested against, we should probably hold that the plaintiffs should not be estopped by such participation. But such is not the case, the only actual injury complained of being that the stock which was voted for defendants had been acquired by the holders without having first been offered to the company—a condition which was not brought about or affected by the place or manner of holding the election.

As to the fourth objection, as stated above, it is established doctrine in England, and in by far the majority of our sister states, that a corporation cannot purchase shares of its own capital stock. Morawetz on Pr. Corps. §§ 230, 231; Clark on Corp. p. 153; Elliott on Pr. Corps. p. 44; Cook on Stock & Stockholders (2d Ed.) § 311, note.

It is, however, unnecessary for us to decide at this time whether, in view of the general law of this state under which the corporation now before the court was established, the provision upon that subject in its charter can be sustained. Conceding (arguendo, merely) that it may be, nevertheless that provision is intended for the benefit of the corporation, and not of individual stockholders, and it cannot be invoked by the latter merely upon the ground that the persons acquiring stock which had not been first offered to the company did so for the purpose of obtaining control of the company, since they had a right to acquire it for that purpose; nor can it be invoked by the company, since, in permitting the stock to be transferred to the persons acquiring it, the company necessarily waived any rights which it may have had to purchase it by preference.

The charter of a business corporation may regulate the voting capacity of its stockholders, and, where such capacity is determined by the number of shares held, coupled with a provision that no individual shall hold more than a certain number, it (the voting capacity) is limited to that number, and the pro-

vision cannot be evaded by holding and voting stock through a person interposed. From the provision in the charter referred to in the petition, but not annexed thereto, to the effect that "no person can subscribe to, or hold, more than fifty shares of said stock in his individual name," it may reasonably be deduced that it was the purpose of the incorporators that no member should cast more than 50 votes. The plaintiffs do not, however, allege that any one member holds more than 50 shares, or has cast, directly or indirectly, more than 50 votes. The complaint is that different individuals have acquired stock in order that they may collectively control the company—a course which they have a right to pursue. It is true that it is alleged that "Fourton and his associates" have placed blocks of stock in the names of persons who have no real interest, but that allegation seems to refer to the past, and there are other allegations that "Fourton and his associates have purchased," and that defendants and others named have "acquired," stock, with no intimation that they have acquired it otherwise than for value, or held it as persons interposed; and if they acquired it for value, and held and voted it for themselves, it cannot be said or taken as true that they were without interest in the corporation. We therefore conclude that, as to the main demand, the exception was properly maintained.

Considering the application for the appointment of a receiver, it will be remarked that, whilst it is alleged that "Fourton and his associates have leased the corporate property for their own individual benefit and advantage, and not for the interest and advantage of all the stockholders, and managing [?] the corporate property to the prejudice and injury of petitioners and all other stockholders similarly situated," these allegations do not identify the present defendants with Fourton's associates who are thus charged, in conjunction with Fourton, with mismanagement. In other words, the alleged mismanagement necessarily occurred in the past, "several" or 14 years ago, and it is not alleged that Fourton has always been associated with the same persons, or that he has ever, prior to the recent election, been associated with any one of the present defendants. The charge of mismanagement (couched, as it is, in terms too general to entitle it to serious consideration) cannot, therefore, be said to be leveled at any of said defendants, save Fourton himself, who is but one member of a board consisting of nine members.

For the purposes of this application, the plaintiff invokes paragraphs 2, 3, and 11 of Act No. 159, pp. 312, 313, of 1898, which authorize the appointment of a receiver, "at the instance of any stockholder or creditor," when the officers are grossly mismanaging the corporation, or when there is no one authorized to take charge of its affairs, and, at the instance of "any stockholder, when a majority of the stockholders are violating the charter rights of the minority and putting their interests in imminent danger." Referring to the exercise of the power thus conferred, Mr. High expresses himself as follows, to wit:

"When the jurisdiction of courts of equity has been extended by legislation to the appointment of receivers over incorporated companies, the power thus conferred is treated by the courts as a delegated authority, the exercise of which requires most careful consideration. The effect of appointing a receiver being to take the property of the corporation out of the control of its own officers, to whom it has been intrusted by its stockholders, the courts proceed with extreme caution in the exercise of so summary a power, and in construing such statutes they are inclined to give them a strict construction, and require the prescribed method of obtaining jurisdiction of the person and subject-matter to be strictly followed." High on Receivers (3d Ed.) § 289.

Applying the views thus expressed, which meet with our approval, to the case here presented, we are of opinion that the allega-

tions of the petition disclose no sufficient reason for the appointment of a receiver. The judgments appealed from are accordingly affirmed, at the costs of the appellants.