No. 2117.

Second Circuit.

J. P. BROWN v. N. K. PARISH, Appellant.

(December 3, 1924, Opinion and Decree)
(January 22, 1925, Rehearing Refused)

*(Syllabus by the Editor.)*

1. Louisiana Digest—Evidence—Par. 344;
   Landlord and Tenant—Par. 32.

Where a lease for five years must be renewed from year to year, the uncontradicted testimony of the lessor, the plaintiff, that he did not renew it at the end of the first year must be taken as a fact.

2. Louisiana Digest—Estoppel—Par. 37, 38, 39.

The reference of the lessor to a lease as a "five-year lease" does not estop him from showing that it was to be renewed at the end of each year but had not been renewed.

3. Louisiana Digest—Estoppel—Par. 22;
   Registry—Par. 7.

A public record is an available means of information as to questions of title, and one who does not take advantage of it cannot claim an estoppel against one who merely fails to furnish such information. The lease in this case was recorded.

4. Louisiana Digest—Courts—Par. 128.

In a suit involving a lease for $100.00 per month to be renewed every year for five years, the amount in dispute is $1200.00 for one year, and consequently the Court of Appeal has appellate jurisdiction.

Appeal from the First District Court, Parish of Caddo, Hon. J. H. Stephens, Judge.

This is a suit to eject tenant from leased premises.

Judgment for plaintiff and defendant appealed.

Judgment affirmed.

W. M. Phillips & T. Overton Brooks of Shreveport, attorneys for plaintiff and appellee.

Slattery & Slattery of Shreveport, attorneys for defendant and appellant.

ODOM, J. Plaintiff is the owner of certain property in the city of Shreveport, known as 2916 Gilbert St. In the month of April, 1922, he leased his property to one C. M. Anthony, under written contract which reads, in so far as it is necessary to quote the same as follows: "For the sum of One Hundred Dollars per month, payable in advance each month, beginning March 6, 1922, and extending one year from then, the said Brown does hereby lease to the said party of the second part (C. M. Antony) that said portion of the building now occupied by said business, and said party of the second part accepts said lease on said terms, it being agreed that he may have said lease renewed at the end of his lease on same terms and at same price per month for another year, and again and again, to cover five years from March 6, 1922—but it is agreed that said party of the second part shall not sub-lease any part of said property without the written consent of said J. P. Brown."

On January 10, 1924, the owner of the property, J. P. Brown, filed this suit, setting up the fact that he had leased the property to C. M. Antony, under the above quoted contract and he alleges "that at the end of the year said lease was not renewed for an additional year, as required by the terms of said contract, and that since said date said Antony has been a tenant from month to month."

And he further alleges that in the latter part of the year 1923, said Antony sold his business to N. K. Parrish, and that since said date said Parrish has been suffered to remain in said premises and pay

rent as a tenant from month to month, and that on Dec. 15, 1923, he notified said Parrish to vacate said premises at the end of the month beginning Dec. 6 and ending Jan. 6th, 1924, and that notwithstanding said notice to vacate said tenant has refused to do so and still occupies the property.

In paragraphs 6-7-8 & 9 of his petition plaintiff sets up as an alternative plea, in case the court should hold that the lease was renewed at the end of the first year, that Antony, the original lessee, breached the contract by sub-leasing to one H. L. King a portion of the premises without his written consent.

However, his plea has been abandoned and plaintiff rests his case on the sole ground that the lease was not renewed at the end of the first year.

Plaintiff prays that a rule issue to the said N. K. Parrish, ordering him to show cause why he should not be ejected from said premises and ordered to re-deliver the same to him, and that upon trial there be judgment, "ejecting said Parrish from said premises and to pay all costs of this suit and rent on said premises at the rate of One Hundred Dollars per month from January 6, 1924, to such date as such premises may be re-possessed by the plaintiff herein."

Defendant filed answer in which he admitted plaintiff's ownership of the property, admitted that the property was leased to C. M. Antony, as alleged, admitted that in the latter part of the year 1923 he had acquired the interest of said Antony in the business, and admitted that on Dec. 15, 1923, the plaintiff notified him to vacate the premises. But he especially denies paragraph 3 of the plaintiff's petition in which it is alleged that the lease was not renewed. And further answering,

he sets up that prior to the time he purchased the business from Antony, which was in the latter part of the year 1923, several months after the expiration of the one-year lease, "he was told by the said Antony that the property was leased for a period of five years from March 6, 1922, at a monthly rental of One Hundred Dollars, that he then called on said Brown, to have this statement verified, he not knowing that said lease was in writing or any of its terms otherwise than as disclosed by the said Anthony, and the said Brown told him that the property was leased for a term of five years, that your defendant, acting on the statement of said Brown, lessor, purchased the said business", and he sets out that the fact that the lease was in a desirable neighborhood and for a term of years was a material consideration of said purchase and that he "would not have otherwise bought it and the fixtures," and that the said Brown "with full knowledge of the facts above mentioned, and yet leading your defendant to believe that he was taking over the business as it stood and having told him that the property was under lease for five years from March 6, 1922, is now estopped to claim that said lease had been forfeited and its terms violated and having further held out to you defendant that said property was under lease for five years, is now estopped to deny this fact, which estoppel in both instances as above alleged is especially pleaded in for of plaintiff's rights herein." And he further pleads in answer that in as much as plaintiff knew that he, defendant, was under the impression that the property was under a five-year lease, that it was plaintiff's duty, in all fairness, to disclose to him, defendant, that said Antony had not renewed it and that plaintiff should have advised defendant to renew the lease, if indeed it had not been renewed by Antony.

There was judgment in the lower court ordering the defendant ejected from the premises without reference to the amount then due or to become due. The defendant appealed. Plaintiff has not answered the appeal and asked that it be amended. We must assume that he has abandoned the claim for rent due.

Plaintiff sets out in his petition that Antony, the original lessee, had sub-leased a portion of premises, thereby violating the express provision of the contract "that said party of the second part shall not sub-lease any part of said property without the written consent of the said J. P. Brown."

But this plea has been abandoned, as it was not well founded, the proof, indeed, the admission of plaintiff found in the record, showing that plaintiff had given his consent in writing to the transfer of the lease by Antony, to Parrish, so that plaintiff's sole ground for recovering now is that the lease was not renewed at the end of the first year, as the contract provided that it might be.

The court must, therefore, determine whether as a matter of fact the lease was renewed at the end of one year for an additional year, and if not, then whether plaintiff has estopped himself to deny the existence of the lease for the full period of five years, as is contended by defendant.

On the question of renewal of the lease, the plaintiff as a witness in his own behalf, swears positively that there was no renewal. He says he did not discuss the renewal of it with Antony, or any one else, either before or after the expiration of the first year. He says that in the month of January, 1923, Mr. Parrish, defendant, went to him to hire him, but that the lease was not mentioned.

He was asked on cross-examination if after giving Mr. Parrish notice to vacate, he did not go to the store and have a conversation, with Parrish, about the lease, in the presence of Mrs. Parrish.

He answered that he did go to the store for the purpose of buying them out and 'Mrs. Parish said they had a four-year lease and I says 'no, you have not,' so that was all that was said."

He says, however, that he did make a statement to Mr. Antony that there was a five-year lease on the property, that is, that it could be renewed from year to year for five years. This statement to Antony, he says, was made about the time he gave Antony permission to transfer the lease to Parrish, which was, according to the admission in the record, on Jan. 10, 1923. Such a statement could not affect the contract for two reasons—first, Antony was the lessee and signed the lease contract and of course was familiar with its terms, and, second, the statement was made on or about Jan. 10, 1923, practically two months prior to the expiration of the first year.

Mr. Antony, was not called as a witness by either the plaintiff or defendant.

Defendant called one H. L. King, as a witness, King testified that he had occupied a portion of premises, as a tenant since August 1922. He says that Brown, the plaintiff was frequently in his place of business and that about two or three months ago (the case was tried on Jan. 17, 1924, so that the conversation took place in October or November 1923) Brown was in his place and asked on what terms he held the place and "I told him I had leased for five years, or four years, whatever lease the other fellow had, I had the same lease, continued from year to year."

He says that was about the time Anthony sold to Parrish. The testimony shows that Anthony sold to Parrish in the latter part of the year 1923, probably in October or November, several months subsequent to the expiration of the first year of the lease. It will be noted that King, does not say that Brown, the plaintiff made any statement to him about the lease being for five years or that it had been renewed.

N. K. Parrish, as a witness in his own behalf said that he had a conversation "out on the Greenwood road", with Brown with reference to the lease and then "called him aside and said to him, Mr. Brown I am about to buy Mr. Kelly out, what chance is there to get a transfer of the lease to me, and he says 'all right'. that he was tickled to death to get Kelly out of there, and I says will you give it to me in writing and he says I will give it in writing to Mr. Anthony, that night, and I says that is perfectly all right, I will buy it. That is the only conversation I had with him," and he was asked:

Q. "During that conversation did you have any talk with him about the terms of the lease?"

A. "Well I asked him how long it was leased for and he said five years, with four years more."

Q. "Did he tell you anything about the lease, that there was an obligation to renew it each year?"

A. "No sir."

Q. "He just simply made the statement that it was a five-year lease?"

A. "Yes sir, and I would have four more years."

The conversation took place before Brown, gave his consent to the transfer, on Jan. 10, 1923, and was therefore, two months or more prior to the expiration of the first year.

Parrish had another conversation with Brown, about the lease, but it seems that was about the time or possibly after the suit was filed, for he speaks about a compromise of the matter.

On page 19 of the testimony, Parrish says he finally purchased the lease in Oct. 1923. (about seven months after the expiration of the first year) that he did not see the lease contract as it was recorded, was at the court house, and he took their word for it.

And on page 20 of the testimony, he says "I went to se him about the lease, I was fixing to buy Kelly out and would not have bought Kelly out if he was not willing to transfer the lease to me". And he was asked: "Did you ask Mr. Brown to see a copy of the lease?" "No sir."

Q. "You knew the lease was in writing, and was recorded?"

A. "Yes sir."

Q. "You did not examine it?"

A. "No sir I did not."

Mrs. Parrish, wife of defendant was called as a witness for him, and was asked if she had a conversation with Mr. Brown, she said she had, but not until after Mr. Parrish had purchased the store from Mr. Anthony, and on further examination it was found that his conversation took place after Brown had determined to disposses the lessees.

We have referred to and quoted all the testimony in the record which we think is pertinent to the question whether the lease was renewed and the question of estopel.

This testimony does not warrant us in holding that the lease was renewed at the end of the first year. Brown, says he did

not renew it, and his testimony on this point stands uncontradicted. He did say to Parrish in January 1923, previous to the expiration of the first year that it was a a five-year lease; and so it was in the ordinary acception of that term.

We usually refer to leases of the tenor of this one as "five-year leases".

It was an unconditional lease for one year, with the option in the lessee to renew it from year to year for four additional years. None of the statements attributed to the plaintiff can be construed as an agreement to renew the lease. The only reasonable construction to be placed on his remarks is that the lessee had a five-year lease if he chose to exercise his opinion to make it such.

On the question of estoppel, can the doctrine of estoppel "in pais" or equitable estoppel, be successfully invoked against the plaintiff under the facts of this case? We do not think so.

"A false representation of concealment of material facts is an essential element of estoppel;" Bryan vs. Bonvillan, 11 La. 462, Equitable estoppel or estoppel by conduct is said by Bishop to have its foundation in fraud. "Representations to constitute an estoppel must be made to induce the other party to act, and must have been inducted to act."

Plaintiff made no false representations to defendant. The statement that the lease was a five-year lease was not false. Plaintiff by agreeing that the lease might be renewed from year to year for a full five-year period granted to the lessee a complete option to bind his property for that period, under such conditions it is not a false representation for a landlord to say that he has granted a five-year lease.

Estoppel is not favored in law and should not be permitted except in clear cases.

See Honor vs. McDonald, 52 La. Ann. 396, 27 South. 91; Harvin vs. Blackman, 108 La. 426, 32 South. 452.

This is by no means a clear case and we see no reasons for invoking it.

There is another phase of the case which should not be overlooked. Defendant knew that the lease was in writing, and he knew it was recorded "at the court house". He had every facility for familiarzing himself with its terms.

We find the following in 16 CYC. page 738.

"As a corrolary to the proposition that the party setting up an estoppel must have acted in reliance upon the conduct representations of the party sought to be estopped, it is as a general rule essential that the former should not only have been destitute of knowledge of the real facts as to the matter in controversy, but should also have been without convenient or ready means of acquiring such knowledge."

"A public record is an available means of information as to questions of title, and one who does not take advantage of it can not claim an estoppel against one who merely fails to furnish such information". This doctrine is supported by decisions from many of the states of the Union as well as Federal reports.

In Frantz vs. Fisk, 125 La. 1013-1033, 52 South. 131, the court said:

"With respect to the second pair (earrings) Firk is not in a position to invoke equitable estoppel. For him to be in position to do so it would be necessary that he should not only have been destitute of knowledge of the real facts he should also have been without convenient or ready means of acquiring such knowledge."

Parrish had every facility for giving first hand knowledge of the contents of the lease in this case. The lease was on record at the recorder's office in the city where the property and business were located and he knew it. He failed to read it. He is not

in position, therefore to plead estoppel.

We find and hold that the lease was not renewed at the end of the year that plaintiff is not estopped to set up that plea.

This is urban property. The reconduction which took place at the end of the year was from month to month. No citation of authority is necessary on this point as there is no dispute about it. Defendant was therefore occupying the property on Dec. 15, 1923, under a month to month lease. On that date plaintiff served notice on him to vacate the premises at the end of the month ending Jan. 6, 1924.

He refused to do so and still refuses. The lessor's right to eject his tenant at the expiration of the lease cannot be questioned. C. C. Art. 2713.

Act 46 of 1918, p. 71.

The month to month lease ended on the 6th day of each month. Plaintiff gave more than ten days' notice.

On the question of jurisdiction. Plaintiff, appellee, filed a motion in this court to dismiss the appeal on the ground that the amount in dispute does not exceed $100.00 He has withdrawn that motion.

Defendant, appellant, also filed a motion to have the case transferred to the Supreme Court on the ground that this court has no jurisdiction. He alleges that the case was appealed to this court through error. We think this court has jurisdiction. The amount in dispute, according to plaintiff's petition exceeds $100.00 but does not exceed $2000.00. The monthly rental under the contract is $100.00, or $1200.00, for one year. The lease had four more years to run provided the lessee exercised his option to renew it, but it could not be renewed for more than one year at a time so that the value of the lease could not exceed $1200.00. There was no proof made of the value of the right to renew the lease.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the lower court be affirmed, appellant to pay all costs.