EDWIN L. BLABON *vs.* ROBERT T. HAY & another.

Suffolk. October 11, 1929. — December 16, 1929.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Agency,* What constitutes. *Fiduciary. Broker. Contract,* Construction, Performance and breach. *Trust,* Constructive. *Corporation,* Officers and agents, By-laws, Sale of stock. *Evidence,* Relevancy and materiality, Competency, Of state of mind, Of value.

A stockholder of a Massachusetts corporation, living in Pennsylvania, wrote to the secretary of the corporation in Boston stating that he would like to sell his shares and asking to be advised what their market

price then was. The secretary replied that he could place all of the stock at $100 per share, "and if you will send your certificate to any bank in Boston properly endorsed with directions, I will take care of the matter." A year later the stockholder made a similar inquiry, requesting a reply by telegram. The secretary telegraphed the same price. The stockholder then sent his shares, indorsed in blank, to a bank in Boston with a draft on the secretary attached and with direction not to deliver them until the draft was paid. The secretary, with money provided by the president, who joined him in the venture, and with money borrowed elsewhere, paid the draft and took the shares for himself and the president. At a hearing of a suit in equity by the stockholder to charge the secretary and the president as constructive trustees by reason of profits made by them through a sale of the stock about a year after they acquired it, the judge found that, during the period of the negotiations, the defendants were familiar with, and that the plaintiff was unfamiliar with and had no knowledge of, the financial condition of the corporation. He ruled that the secretary, in the sale of the plaintiff's shares, was not acting as the plaintiff's agent for the purpose of making a sale or sales thereof and also that no fiduciary relation existed between them. *Held,* that

(1) Whether the right or authorization which enabled the secretary to control the disposition of the stock be called an agency or by some other name was unimportant unless the relationship carried with it a fiduciary obligation;

(2) Although the relation of principal and agent may partake of a fiduciary character, ordinarily it does not;

(3) The fact that the defendants were directors did not create such fiduciary obligation in the circumstances;

(4) The judge rightly ruled that at the time of sale and in the preceding negotiations neither defendant stood in any fiduciary relation to the plaintiff;

(5) The secretary had a right to assume that his whole undertaking with the plaintiff was at an end when he had complied with the request to pay the draft.

The judge who heard the suit above described further found not only that the price paid was the fair market value of the stock at the time, but that both defendants acted throughout in good faith and had no intent or purpose to mislead, cheat or defraud the plaintiff; that the secretary did not expect to receive and did not receive any commission or compensation for his services; that there was no evidence that the plaintiff expected to pay any compensation to the secretary therefor; and that there was no misrepresentation or fraudulent concealment of facts which might affect the value of the stock or the willingness of the owner to sell. *Held,* that

(1) The rules applicable to contracts with a broker employed to sell and buy property were not applicable, the secretary not having such a relation to the plaintiff;

(2) The secretary violated no duty owed to the defendant.

The by-laws of the corporation above described provided that no shares of stock should be sold by an owner until he had offered them in

writing for sale to the corporation. Neither the plaintiff nor the secretary offered the stock to the corporation. Before transferring the stock, the secretary, following the usual practice, obtained the assent in writing of a majority of the directors, excluding themselves, to the transfer of the stock to himself and the president. This transaction was formally ratified by the directors at a later meeting. The plaintiff did not know whether or not the stock was offered to the corporation by the secretary and did not know to whom it had been sold until after the stock had been sold by the defendants. *Held,* that

(1) The provisions in the by-laws as to the transfer of shares were inserted for the benefit of the corporation and could be waived by the directors;

(2) The secretary violated no duty to the plaintiff in not offering the stock to the corporation.

In the suit above described, the judge found that the plaintiff was unfamiliar with and lacked knowledge of the financial condition of the corporation. *Held,* that such finding made immaterial exceptions saved by the plaintiff to the exclusion of evidence to show that fact.

It was proper for the judge hearing the suit above described to exclude testimony as to the plaintiff's state of mind not communicated to the defendant secretary.

Testimony by stockholders of the corporation, at the hearing above described, as to the market value of the shares of stock in question, was *held* rightly to have been admitted, they having been shown to have sufficient familiarity with it and with the affairs of the corporation to justify the judge in deciding that they were qualified to give such testimony.

Testimony as to the market value of the shares of stock in question at the hearing above described rightly was admitted, although the corporation's by-laws restricted transfer, the stock was not listed on any exchange and sales which had been made were to other holders of the stock.

Evidence, at such hearing, of the value of the stock at a time before the sale of the plaintiff's stock was competent in the discretion of the judge, in the absence of testimony to show a change in value before the sale.

At the hearing above described, evidence as to the book values of the stock and of the circumstances connected with the business which might make those values higher than the market value, and of several sales of the stock within a five-year period before the sale of the plaintiff's stock, was introduced. It appeared that a sale made by the defendants about a year after their purchase from the plaintiff was to persons who sought enough shares to give them control of the corporation, and that the price then paid the defendants was about two and one half times that which they had paid to the plaintiff. The judge found the price paid by the defendants to the plaintiff to have been the fair market value of the stock at that time. *Held,* that

(1) It could not be said that the finding of the judge was wrong;

(2) The judge was not bound to find that the book value was its market value, nor that the price paid by those purchasing from the defendants to obtain a controlling interest in the stock represented its actual market value at that time or before.

BILL IN EQUITY, filed in the Superior Court on June 9, 1928, and described in the opinion.

The suit was heard by *Bishop*, J., a stenographer having been appointed under G. L. c. 214, § 24, Equity Rule 29 (1926). Material facts found by him are stated in the opinion. By his order the bill was dismissed. The plaintiff appealed.

*H. W. Ogden*, (*E. J. Owens* with him,) for the plaintiff.

*R. Homans*, (*R. S. Sughrue* with him,) for the defendants.

SANDERSON, J. This is a bill in equity in which the plaintiff seeks to charge the defendant Hay, and the defendant Blaney as executor of the will of John L. Lochhead, deceased, as constructive trustees, with the difference between what Hay and Lochhead paid the plaintiff for shares of stock in the Conveyancers Title Insurance Company, a Massachusetts corporation, and the price which they later received for the shares. Hay and Lochhead will be referred to as the defendants. The case was heard by a judge without a jury upon correspondence between the plaintiff and Hay, answers to interrogatories and oral evidence.

The plaintiff was the owner of forty-one shares of the capital stock of the company until February, 1927. Lochhead was then president of the corporation, and Hay a director and secretary. In January, 1926, the plaintiff, who lived in Pennsylvania, addressed a letter to the "Secretary, Conveyancers Title Ins. Co." in Boston, stating that he would like to sell his shares of stock if he could secure a satisfactory price, and asking to be advised what the market on the stock then was. In reply to that letter the defendant Hay wrote that he could place all of the stock at $100 per share, "and if you will send your certificate to any bank in Boston properly endorsed with directions, I will take care of the matter." The letter also informed the plaintiff of a coming meeting of the directors at which it was expected

the regular dividend would be declared. The next communication was from the plaintiff to Hay, dated February 19, 1927, in which reference was made to the plaintiff's letter of the previous year, and in it the plaintiff again stated that he would like to dispose of the stock if he could secure a satisfactory price, and asked for information by telegraph as to the price at which Hay could then dispose of the stock, stating that upon receipt of the information he would forward his stock with draft attached through a trust company. Hay replied by telegram, "Can sell stock for $4100." The plaintiff replied that he had received the telegram and would forward the stock with draft attached. Thereafter the stock, indorsed in blank, was duly forwarded through a bank, accompanied by a draft on "Robert T. Hay, Sect'y" for $4,100 with instructions on the draft to deliver the stock only upon payment. A few days later Hay wrote the plaintiff for the cost of transfer stamps on the stock, and remittance therefor was made by letter in which the plaintiff referred to the "stock which you disposed of for me." Lochhead took no part in these transactions. At the time when Hay received the letter of February 19, 1927, and sent the telegram he had no intention of buying the whole or any part of the stock for himself, and did not know to whom he could sell it, but felt confident that he could dispose of it at the price named. He got into communication with several of the directors, none of whom, except Lochhead, was interested in the purchase. Lochhead agreed to take twenty-one of the shares, and Hay, finding no other purchaser for the remainder, borrowed the money with which to buy the stock himself, and with the money obtained from Lochhead and the money borrowed he paid the plaintiff's draft.

The by-laws of the company provide in article 1 of chapter 7 that no shares of stock shall be sold by an owner until he has offered them in writing for sale to the corporation. Neither the plaintiff nor Hay offered the stock to the corporation. On February 24, 1927, Hay, following the usual practice, obtained the assent in writing to the transfer of the stock to himself and Lochhead, of a majority

of the directors, excluding themselves. This transaction was formally ratified by the directors at a later meeting. The plaintiff did not know whether or not the stock was offered to the corporation by Hay and did not know to whom it had been sold until February, 1928. Lochhead, in purchasing the stock from Hay, was aware of the fact that the plaintiff had made inquiries of him as to the possibilities of sale and also knew that the shares received came from the plaintiff.

During 1927 the plaintiff was not acquainted with the financial condition of the company or with the market, book or potential value of the stock except as he had been advised by Hay in the letters referred to, and from statements sent him from time to time by the company. The defendants during 1927 were familiar with the financial condition of the company and with the approximate market and book value of the stock, and knew that book values were affected by reason of the hazard of the company's insurance business, its comparatively small capital and reserves, the restrictions on the sale of the stock, and the difficulty of liquidating the company. In the autumn of 1924 an inquiry had been made to ascertain if a controlling interest in the corporation could be purchased, and the board of directors declined to entertain such a proposition. In November or December, 1927, offers were made for the stock provided a controlling interest could be obtained, and at a meeting of the directors held on February 7, 1928, they voted to approve the transfer of all shares sold in accordance with an offer of $251.67 per share and to waive all rights of the corporation under article 1 of chapter 7 of the by-laws; some time in February or March, 1928, more than a controlling interest in the stock of the corporation including that owned by the defendants was sold on the basis of this offer. The defendants knew of the inquiries made in 1924 concerning the sale of a controlling interest in the company, but they did not know and had no reason to anticipate that any such offer as that received in 1928 would be made. In buying the stock they felt that it was worth $100 per share and might at some time be worth

more. The judge found not only that the price paid was the fair market value of the stock at the time, but that Hay acted throughout in good faith and had no intent or purpose to mislead, cheat or defraud the plaintiff, and that the same was true of Lochhead; that Hay did not expect to receive and did not receive any commission or compensation for his services; and that there was no evidence that the plaintiff expected to pay any compensation to Hay therefor. There was no misrepresentation or fraudulent concealment of facts which might affect the value of the stock or the willingness of the owner to sell.

The relationship between the parties was established in the first instance by the correspondence, and we must look to that to ascertain what Hay's undertaking was. The judge granted the defendants' request that Hay, in the sale of the plaintiff's shares, was not acting as his agent for the purpose of making a sale or sales thereof. No prejudicial error appears in this ruling; whether the right or authorization which enabled Hay to control the disposition of the stock be called an agency or by some other name is unimportant unless the relationship carried with it a fiduciary obligation. "Although the relation of principal and agent may partake of a fiduciary character, ordinarily it does not . . . . " *Putnam* v. *Scahill*, 266 Mass. 537, 539. Upon the facts in this case, the judge rightly ruled that at the time of sale and in the preceding negotiations neither Hay nor Lochhead stood in any fiduciary relation to the plaintiff. The fact that the defendants were directors created no fiduciary relation between them and the plaintiff in the matter of the sale of his stock. *Smith* v. *Hurd*, 12 Met. 371. *Converse* v. *United Shoe Machinery Co.* 185 Mass. 422. *Lee* v. *Fisk*, 222 Mass. 424, 426. *Percival* v. *Wright*, [1902] 2 Ch. 421. The cases of *Elliott* v. *Baker*, 194 Mass. 518, *Hawkes* v. *Lackey*, 207 Mass. 424, *O'Brien* v. *O'Brien*, 238 Mass. 403, and *Reed* v. *A. E. Little Co.* 256 Mass. 442, do not otherwise decide.

Until Hay paid the draft he was given no authority or right to dispose of the stock or to make any contract concerning it. The plaintiff himself placed title to it in Hay,

whom he addressed as an official of the corporation. There was nothing in the correspondence to indicate that the plaintiff desired to sell to the corporation or that he cared what Hay did with the stock after he had paid for it. Hay had a right to assume that his whole undertaking with the plaintiff was at an end when he had complied with the request to pay the draft. *Putnam* v. *Scahill, supra.* A distinctive feature of an agency relationship is its representative character. It is in general an employment for the purpose of representation in establishing legal relations between the principal and third parties. The plaintiff made to Hay no offer of employment to sell his stock, nor did he intrust Hay with any discretion or purport to repose any special confidence in him in the matter. *Comstock* v. *Livingston,* 210 Mass. 581, 584. The plaintiff made his own decision as to the price, and authorized the delivery of the stock to Hay only when he had paid the draft. Thereafter Hay alone could pass title to third persons and contracts concerning the stock would necessarily be between them and Hay and not between the plaintiff and them. See *Whitney* v. *Beckford,* 105 Mass. 267. Under the circumstances disclosed by this record, Hay violated no duty owed the plaintiff in retaining a part of the stock for which he had paid and selling the rest to Lochhead. *Nash* v. *Minnesota Title Ins. & Trust Co.* 163 Mass. 574, 579. *Percival* v. *Wright,* [1902] 2 Ch. 421. Hay had no such relation to the plaintiff as a broker employed to sell or buy property has to his principal, and the rules applicable to contracts of that nature are not germane to the facts in this case. See *Walker* v. *Russell,* 240 Mass. 386. The cases of *McNutt* v. *Dix,* 83 Mich. 328, and *Porter* v. *Woodruff,* 369 Stew. (N. J.) 174, dealt with a breach of a fiduciary duty and are otherwise distinguishable in their facts from the case at bar. *Stewart* v. *Joyce,* 201 Mass. 301, was based upon deceit and is otherwise distinguishable in its facts from the case at bar.

The provisions in the by-laws as to the transfer of shares were inserted for the benefit of the corporation and could

be waived by the directors. *Hughes* v. *Citizens' Electric Light, Heat & Power Co.* 226 Penn. St. 95. *Bartlett* v. *Fourton,* 115 La. 26, 31. See *New England Trust Co.* v. *Abbott,* 162 Mass. 148. The plaintiff can have no ground to complain that Hay violated any duty to him in not offering the stock to the corporation. The question whether the plaintiff believed that the shares had been offered to or taken by the corporation was not material to his rights.

The finding as to the plaintiff's unfamiliarity with and lack of knowledge of the financial condition of the company made immaterial the exceptions to the exclusion of evidence on that subject. The rulings excluding testimony as to the plaintiff's state of mind not communicated to Hay were right. *Taft* v. *Dickinson,* 6 Allen, 553. *Central Trust Co. of New York* v. *Bridges,* 57 Fed. Rep. 753, 764. The foundation was sufficiently laid for the introduction of the testimony of three owners of the stock as to its market value. They were shown to have sufficient familiarity with it and the affairs of the corporation to justify the judge in deciding that they were qualified to give such testimony. *Lyman* v. *Boston,* 164 Mass. 99, 105, 106. *Shea* v. *Hudson,* 165 Mass. 43, 45. Evidence as to the book values of the stock and of the circumstances connected with the business which might make those values higher than the market value, and of several sales of the stock within a five-year period before the sale of the plaintiff's stock, was introduced. Stock may have a market value even if not listed or quoted on any exchange, and even if the sales which have been made were to other holders of the stock. Evidence of value shortly before the sale of the plaintiff's stock was competent in the discretion of the judge, in the absence of testimony to show a change in value. The price which the stock had almost uniformly brought was some evidence of its market value. The judge was justified in considering all the testimony on the question of value, and we cannot say that his finding on that issue was wrong. He was not bound to find that the book value was its market value, nor that the price paid in 1928 to obtain a

controlling interest in the stock represented its actual market value at that time or before.

All questions argued have been considered and we find no reversible error.

*Decree affirmed with costs.*