## HARMEYER et al. v. ANDERSON et al.
### No. 4933.

Court of Appeal of Louisiana. Orleans.
June 28, 1934.

Cahn & Cahn, of New Orleans, for appellants.

Titche & Titche and Robt. D. Samsot, all of New Orleans, for appellees.

WESTERFIELD, Judge.

The Harmeyer Service, Inc., was organized with a capital of $30,000, represented by 300 shares of stock of the par value of $100

each. The original subscribers to the stock were as follows:

Arthur A. Harmeyer, 149 shares.

Thomas C. Anderson, 149 shares.

Harry D. Smith, Jr., 1 share.

Emory D. Flowers, 1 share.

The charter of the corporation contained a provision providing for preemptive rights of the original subscribers reading as follows:

"No stockholder may sell his stock in this corporation unless thirty (30) days previous notice in writing of such intention to sell is given to the other stockholders, and upon such notice the stockholders shall have the right to purchase such stock offered for sale in proportion to their holdings at the time said offer to sell is made, at its par value. If after thirty (30) days, the stockholders do not purchase the stock offered, said party offering same may sell it to any person, though not a stockholder of this corporation. This clause shall appear on the face of all stock certificates issued."

Thomas C. Anderson died on the 10th day of December, 1931, and Arthur A. Harmeyer on the 14th of August, 1933.

On January 20, 1934, Mrs. Clara Harmeyer, wife of William J. Flair, and Walton L. Miller, Jr., brought this action, in which it is alleged that the petitioners, as heirs of the late Arthur Harmeyer, are collectively the owners of 149 shares of stock, the interest formerly owned by Arthur Harmeyer in Harmeyer Service, Inc.; that the heirs of Thomas C. Anderson have improperly acquired the two certificates issued in the name of Smith and Flowers, respectively, of one share each upon the ground that "the said shares issued to said Smith and Flowers were 'dummy' shares for which no consideration whatsoever was paid, and were intended solely and exclusively as qualifying shares, and conveyed no right, title or ownership to either said Smith or Flowers, or vested in them at any time, any rights, whether of voting power, or as stockholders or otherwise"; and upon the further ground that the shares had been transferred in violation of the preemptive clause of the charter of the corporation.

The petition contains other allegations which are of little or no legal consequence, to the effect that it was the intention of the original incorporators, Anderson and Harmeyer, to forever preserve equality of ownership in the stock of the corporation "between them and their heirs and assignees," a situation which is jeopardized or destroyed by the transfer of the shares held by Smith and Flowers.

The petition concludes with a prayer for an annulment of the two certificates of stock originally issued in the name of Smith and Flowers and, in the alternative, that defendants be ordered to sell the two shares in compliance with the preemption clause of the charter.

The Anderson heirs answered admitting the ownership of the 149 shares originally subscribed for by their ancestor and of the 2 shares originally issued in the name of Emory D. Flowers and Harry D. Smith, which they deny were issued without consideration, or were in any sense "dummy shares," and aver that they were properly acquired for adequate consideration. They also aver that the share belonging to Smith was, on June 8, 1933, transferred to Miss Gertrude Hoffmire, and a new certificate issued in the name of Miss Hoffmire, having been signed by the late Arthur Harmeyer; that the share originally issued in the name of Emory D. Flowers was for a valuable consideration transferred to Thomas C. Anderson during his lifetime, with the knowledge and approval of the late Arthur Harmeyer, whose signature appears upon the certificate of stock; that at the time of the death of Thomas C. Anderson in 1931 he was possessed of 150 shares of the capital stock of Harmeyer Service, Inc., which interest, together with the one share purchased since the death of Anderson, is now held by his heirs, defendants herein, in the proportion mentioned in the answer. A plea of estoppel is interposed based upon the ground that the conduct of plaintiff's ancestor, Arthur Harmeyer, in assenting to the several transfers of stock, without compliance with the preemption clause and without objection on any other ground, is inconsistent with the subsequent complaint concerning the legality of the transaction. Upon the trial of the case the certificates of stock bearing the signature of Arthur Harmeyer were introduced in evidence and counsel for plaintiff announced his readiness to argue the plea of estoppel. Counsel for defendant objected upon the ground that the case should be tried upon the merits before consideration of the plea should be had. The court overruled the objection of defendant's counsel, and, after a hearing, maintained the plea and dismissed the suit. In this court it is stoutly contended that the action of the trial court was erroneous and that the plea should not have been considered until after a trial was fully had upon the merits. We are referred to a number of au-

thorities holding, in effect, that estoppels are not favored in law (Harvin v. Blackman, 108 La. 427, 32 So. 452, 456; Brown v. Parish, 1 La. App. 250) and to other authorities which hold that, wherever there is reason to suspect that the plea of estoppel may be the instrument of an injustice or of oppression, "justice would be better subserved * * * by dealing with the question of estoppel at the end of a trial, after evidence adduced, than at the beginning of one, on unexplained papers. Succession of Francez, 49 La. Ann. 1740, 23 So. 254."

█ In the case at bar defendant's counsel was asked whether he had any evidence to submit bearing upon the question of estoppel, and it was only after he replied in the negative that the plea was considered and disposed of. There was, therefore, before the court all available evidence touching upon, or relating to, the plea. It consisted of the several stock certificates bearing the signature of the plaintiff's ancestor and author in title. The genuineness of the signature was not in dispute, or challenged, and there was consequently no necessity of proceeding further with the trial of the case before considering the effect of the plea of estoppel.

In Corpus Juris, verbo "Corporations," § 603, we read:

"The validity and effect of such a transaction depends, not only upon the provisions of the constitution or statutes in the particular jurisdiction, but also upon who is complaining, and often upon other circumstances.

"By the weight of authority, when there is no constitutional, statutory, or charter prohibition in the way and the rights of other stockholders, or of creditors of the corporation are not involved, a corporation has the power to issue shares of its stock as full paid on payment of less than its par value, whether in money or in property, in labor or services, and the agreement under which they are so issued will be binding as between the parties so that the corporation can neither deny the other party the rights of a stockholder nor compel him to pay for the stock contrary to the agreement, and so that the other party will be liable on the agreement."

And, in section 613:

"An issue of stock by a corporation as a bonus or gratuity, at less than its par value, or on payment therefor in property at an overvaluation, is binding, not only upon the corporation itself unless void under a constitutional or statutory provision, or unless the issue is by officers without authority, but also by estoppel, even when in violation of a constitutional or statutory provision, upon participating, consenting or acquiescing stockholders and their transferees, so that they cannot sue to set the transaction aside or to hold the subscribers or purchasers liable contrary to the agreement, or to hold the directors personally liable or to contest the right of the holder of such stock to vote at a corporate meeting."

Fletcher, in his work on Corporations, vol. 11, in section 5138, states:

"If the corporation has power and authority to issue stock of the kind and character in question, a stockholder may be estopped to deny its validity as against the corporation or its creditors because of irregularities or informalities in issuing it. So he is estopped where, with knowledge of the facts, he accepts the stock so issued or contracts with the corporation for it, or where he consents to or has acquiesced in its issuance."

See, also, Wisner v. Delhi Land & Imp. Company, 46 La. Ann. 1223, 15 So. 690.

In Bartlett et al. v. Fourton, 115 La. 26, 38 So. 882, 884, the Supreme Court said:

"The provision (i. e. certain restrictive rights upon the transfer of stock contained in the charter) * * * [cannot] be invoked by the company, since, in permitting the stock to be transferred to the persons acquiring it, the company necessarily waived any rights which it may have had to purchase it by preference."

Article 1817, Rev. Civil Code, reads as follows:

"Silence and inaction are also, under some circumstances, the means of showing an assent that creates an obligation."

█ It is our opinion that in signing the several certificates of stock Mr. Harmeyer waived the charter provision concerning preemptive sale of stock and also any right to complain of the validity of the issuance of the stock and that his heirs are in no better position.

For the reasons assigned the judgment appealed from is affirmed.

Affirmed.