Passebon<br>v.<br>Prieur.

---

## McMasters *v.* The Commissioners of the Atchafalaya Railroad and Banking Company.

In consequence of a dispute as to the person to whom the adjudication was made of property offered for sale at auction, the auctioneer offered it again for sale. The person to whom the first adjudication was made protested against the proceeding, but bid at the second sale, and a third person, not privy to what had occurred on the first exposure, purchased the property. *Held*, that by bidding at the second sale, the first purchaser deprived himself of the right to question a purchase made by a *bona fide* bidder, to whom the property was fairly adjudicated on the second exposure. C. C. 1810. 1811, 1812.

APPEAL from the District Court of the First District, *Buchanan*, J. *Cohen*, for the plaintiff, cited Civ. Code, art. 2585. 1 Story's Equity Jurisprudence, § 385, and *note* 4. Ibid, § 388. *Benjamin* and *Micou*, on the same side.

*Durell*, for the appellant *Sheafe*, contended that he was entitled to the property, citing Civil Code, arts. 2583, 2585, 2586, 2601. 2 La. 506. 5 La. 360. 6 La. 550. 2 Kent 424. 3 Term Rep. 148. Babington on Auctions, pp. 30, 90, 118. 6 Mart. N. S. 678. 7 Ib. N. S. 227. Code of Pract. arts. 680, 681, 689, 690, 691. 8 Mart. 221. 7 Vesey, Jr. 276.

The judgment of the court was pronounced by

EUSTIS, C. J. This case involves a question important in some respects in the law of sales at auction. *Sheafe* and *McMasters* are the parties litigant, and each claims, as being adjudged to him, a judgment for $7,900 against *White*, which was sold at auction among the assetts of the Atchafalaya Bank, under the authority of the commissioners.

*Sheafe* says the judgment was sold to him for $210; *McMasters* that he bought it for $540.

We think the weight of evidence shows that the judgment was knocked down to *Sheafe*. His right was on the spot contested by another bidder, *Calvert*, who had undoubtedly bid about the same time as *Sheafe*. As both claimed the bid, the commissioners directed the auctioneer to cry the judgment of *White* again. *Sheafe* protested against it, but the judgment was again put up for sale.

There was a great crowd present; an animated contest ensued; *both Sheafe and Calvert bid again*, and a stranger who was not privy to the previous doings, stepped in and took the prize for $540; more than double the amount originally bid.

Admitting the allegations of the petition to be true concerning the adjudication of the judgment against *White* to *Sheafe*, there is a fact in this case, to which on the hearing we directed the attention of his counsel in the argument, and which we consider as conclusive of the case. It is this—that *Sheafe* himself was a bidder when the judgment was put up a second time for sale. What was the necessary consequence of his bidding again, so far as third persons

McMASTERS *v.* COMMISSIONERS OF ATCHAFALAYA RAIL-ROAD AND BANKING COMPANY. were concerned? What were the bystanders to infer from seeing both *Sheafe* and *Culvert* bidding again against each other? Could they believe any thing else than that these persons, whatever may have been their reservations against the auctioneer or the commissioners for what had passed, concurred in subjecting the judgment to the test of a sale at auction? Suppose from this competition, which they themselves probably created, the thing offered had been knocked down to a stranger at a price beyond its value, should we have heard any complaints from the parties about their previous pretensions? We consider that by bidding at the second sale, *Sheafe* is estopped from questioning the purchase of a *bona fide* bidder, to whom the judgment has been fairly adjudged by the auctioneer; and we look upon this attempt to wrest this purchase from *McMasters* as unreasonable and unjust.

The facts bring this case completely within the principles maintained in argument by the counsel of *McMasters*, and on which courts are always ready to act whenever a proper case is made out for their application.

Actions without words are presumptive evidence of a contract, when they are done under circumstances that naturally imply a consent to the contract. Civil Code, art. 1810.

Silence and inaction are also, under some circumstances, the means of showing an assent that creates an obligation. Civil Code, art. 1811.

The implication of consent from certain acts is left to the discretion of the judge. Civil Code, art. 1812.

Where one by his words or conduct willfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time. Opinion of Lord Denman in *Pickard* v. *Years*, 6 *Adolphus & Ellis*, 474. Story on Equity, notes § to 385.

The judgment of the District Court was in favor of *McMasters*, and it is affirmed, with costs in both courts.