## L. F. ROGERS *v.* RACHEL CHANDLER et al.

Where the vendor takes a mortgage, to secure the payment of the price of sale, upon other property than that sold, in order to be entitled to the vendor's privilege, if the act itself be not recorded in full, the inscription of the act must state the existence of the privilege, so as to show the intention of the creditor to inscribe it.

A vendor who signs an act of sale made by the vendee, warranting the property free from all incumbrance, is estopped from claiming the vendor's privilege upon the property so re-sold.

APPEAL from the District Court of Jefferson, *Clark*, J.
This case came up on an appeal from a judgment against *Edward Brown*, the intervenor.

*Durant* and *Hornor*, for the plaintiff, made the following points:  1st.  No act has been done by plaintiff, *Rogers*, in any way showing an intention to renounce his privilege as vendor.   Hence this privilege still exists on all the slaves sold. 2d.  The act of sale from plaintiff to defendant is properly recorded, and in accordance with law.   A simple inscription, without transcription of the contract of sale in the office of mortgages, suffices.   10 Duranton, (Brussells Ed.) sec. 207, p. 330.  1 Troplong, Priv. et Hyp., sec. 285, p. 435.  1 Persil, Régime Hypothécaire, 232, 236.   On transcrit les actes de mutation de propriété:  On inscrit les actes emportant privilège et hypothèque, Ib. 232.   Webster's Dictionary, verbo, *Transcribe* and *Inscribe*.   See also 3 L. R. 112.  11 L. R. 264.  3 R. R. 217.  12 R. R., 279.   *Boner* v. *Mahle*, 3d Ann. 600.   *Bacchus* v. *Moreau*, 4th Ann. 315.   L. C. 3238, 3361, 3362, 3364 and 3373.

*Thomas Allen Clarke* made the following points for the intervenor:   The act of sale, so far as any vendor's privilege is concerned, has not the claim *de non alienando*, and therefore the plaintiff cannot seize in the hands of a third person.   But the privilege has been waived.

The judgment of the court *(Slidell*, J. and *Preston*, J., giving separate opinions) was pronounced by

ROST, J.   On the 20th of August, 1849, *Edward G. Rogers*, representing himself as the agent of the plaintiff in this suit, sold certain slaves to *Mrs. Rachel McKinney* for the total price of $1456, for which the purchaser gave her note, payable on the 1st of July, 1850.   Nothing was said in the act about the vendor's privilege, and no mortgage was retained on the slaves; but to secure the payment of the note the vendor specially mortgaged, in said act, two houses and lots belonging to her.

ROGERS
*v.*
CHANDLER.

The vendor did not record the act of sale in full in the office of the recorder of mortgages, but contented himself with inscribing a memorandum which, after stating the terms and conditions of the sale and the note given by the purchaser, reads as follows: "And to secure the payment of said note and interest, the said purchaser does by these presents specially mortgage in favor of said vendor;" then follows a description of the property mortgaged.

On the 6th November, 1849, before the note was due, *Mrs. McKinney* sold one of the slaves to the defendant, *Edward Brown*, for the price of $600, cash. The plaintiff intervened in the act for the purpose of ratifying the sale made by his agent to *Mrs. McKinney*, and did ratify said sale in every particular.

*Mrs. McKinney* did not pay her note at maturity, and the plaintiff now seeks to subject the slave purchased by *Brown* to the vendor's privilege, which he contends the law gives him without any express stipulation, and has caused the slave to be sequestered under his claim, in a suit against *Mrs. McKinney*.

No exception appears to have been taken to the form of the action, but *Brown* intervened, denying the plaintiff's right, and averring his ownership of the slave to the knowledge of the plaintiff, he having been a party to the sale by *Mrs. McKinney*.

The case is before us on the appeal of the intervenor from a judgment enforcing the privilege. The first question for our consideration is, whether the privilege was properly recorded in the office of the recorder of mortgages. Art. 3332, C. C., provides that the inscription of acts on which privileges are founded shall be made in the same manner as that of mortgages.

It has been held in relation to the inscription of mortgages, that although the law requires a copy of the act offered for record to be presented to the recorder of mortgages, it is not indispensable to the validity of the inscription that the entire act should be copied in the books of the recorder; and that a declaration that the mortgage exists, with a statement of dates and amounts and a full description of the property, are sufficient. This is as liberal an interpretation as can be given to art. 3330 of the Code, without defeating the object of the registry laws; and no court of justice should be asked to go farther. I take the rule to be, that when the act itself is not recorded in full, the inscription of the privilege or mortgage it contains must expressly state the existence of the mortgage or privilege, so as to show the intention of the creditor to inscribe it. The inscription of the mortgage in this case was properly made. *But it is* manifest that it was made with exclusive reference to the mortgage.

The vendor's privilege was not thought of by the plaintiff, and there is nothing in the inscription from which the existence of that privilege necessarily results. Its existence under the act of sale should have been stated in the inscription. The recorder of mortgages considered that the privilege was not inscribed, and simply certified, at the time of sale to the intervenor, that there was no mortgage standing in the name of the vendor. The plaintiff was a party to this act, and could not have been aware that he had recorded the privilege, or, I am bound to presume, he would have pointed out the error of the certificate. Had the intervenor inspected the books of record before signing the sale, he must have been deceived as the recorder was.

I conclude, therefore, that the inscription was defective, and that the privilege has not been preserved by it to the prejudice of the intervenor.

It is therefore ordered, that the judgment in this case, so far as it condemns the intervenor to deliver up the slave *James* to be sold by the sheriff under the execution of the plaintiff against *Mrs. Chandler*, or in default thereof to pay the

ROGERS<br>v.<br>CHANDLER.

plaintiff the full amount of his judgment against *Mrs. Chandler*, be reversed. It is further ordered, that the sequestration issued against the slave *James* be dissolved, and that there be judgment against the plaintiff and in favor of the intervenor, with costs in both courts.

SLIDELL, J. I wish to be considered as not expressing an opinion as to the sufficiency of the inscription of the vendor's privilege.

It may be conceded, for the purpose of the present inquiry, that the vendor's privilege was not waived in the conveyance of the slave made by *E. G. Rogers* as the agent of *L. F. Rogers* to *Mrs. McKinney*, and that it was duly recorded. I think the plaintiff is estopped by his concurrence and participation in the sale made by *Mrs. McKinney* to *Brown*. The case is this: *E. G. Rogers* sold the slave, as agent of *L. F. Rogers*, to *Mrs. McKinney* on a credit of one year, and took a special mortgage on land from *Mrs. McKinney* to secure her note for the price. This was on the 20th August, 1849. On the 6th of November, 1849, *Mrs. McKinney* sells the slave by notarial act to *Brown* for $750 cash paid by him. The act contains the usual guarantee against incumbrances. It states the acquisition of title by the act of 20th of August. It refers to the mortgage certificate annexed to the act, by which the recorder certifies that there is no mortgage standing in the name of the vendor, *Mrs. McKinney*, against the slave. The certificate is silent as to the vendor's privilege now claimed by *Rogers*. After the reference to the recorder's certificate comes the following clause: "And now to these presents personally came and appeared and intervened the said *Rogers*, who declared that he has examined the said sale made by his attorney in fact, *E. G. Rogers*, to said vendor for the slave herein conveyed, (with other slaves) and that he hereby ratifies and confirms said sale in every particular."

The language here used shows that *Rogers* had taken cognizance of the antecedent portion of the act. He sees therefore that *Mrs. McKinney* is selling the slave to *Brown* for cash, and that the purchaser is evidently acting under the conviction that the property is unincumbered, although it is true that the recorder's certificate speaks only of the non-existence of any mortgage. Then it seems to us that *Rogers* is equitably estopped from denying the truth of this supposed freedom from incumbrances, upon the faith of which he suffered *Brown* to act, knowing at the time, as the surrounding circumstances compel us to presume, that *Brown's* conduct was materially influenced by a reliance upon the truth of such supposed fact. *Rogers* was silent when he ought to have spoken, and cannot now be permitted to exercise his vendor's privilege. *Fraus est celare fraudem* See *Watson's Exec.* v. *McLaren*, 19 Wendell, 563. *Jacobs* v. *Butler*, ante p. 274. *Hicks* v. *Cram*, 17 Verm. 449. *Thompson* v. *Sanborn*, 11 N. Hamp. 201, cited in U. S. Dig. Sup., verbo, *Estoppel*. Story's Equity Jurisp. § 394. Domat, Book 3, tit. 1, sec. 7, § 15.

PRESTON, J. I concur with Mr. Justice Slidell.