## L. Gayoso v. A. Delaroderie.

Where the defendant is but a nominal purchaser with notice of the plaintiff's claim, he must be regarded as occupying the position of his pretended vendor, and parol evidence should be received to establish simulation with respect to the title between such vendor and other persons.

APPEAL from the District Court of East Baton Rouge, *Robertson*, J. *H. W. Sherborne*, for plaintiff. *J. M. Brunot*, for defendant and appellant.

CAMPBELL, J. (VOORHIES, J., absent.) The plaintiff sues for the recovery of six lots of ground in the town of Baton Rouge, which she alleges she inherited from her mother, *Felicité Perez*, who received the same in 1811, as her share of the succession of her father, *Elias Beauregard*. The defendant likewise claims under *Felicité Perez*, by virtue of a sale of the said lots, executed by her to *Manuel J. Beauregard* in 1813, and a subsequent transfer of said lots made to him by the widow and heirs of *Manuel J. Beauregard* in 1852.

The facts of the case are substantially as follows : *Felicité Perez*, the mother of plaintiff, had allotted to her as one of the heirs of *Elias Beauregard*, in 1811, by act of partition between the heirs, the lots in question, as part of her share of the succession of her deceased father. On the 4th of February, 1813, *Felicité Perez* sold by public act to *Manuel J. Beauregard*, under whom defendant claims.

On the 25th September, 1815, the heirs of *Elias Beauregard*, executed a mortgage in favor of *Carraby*, to secure a debt due him by their ancestor. *Felicité Perez* mortgaged, with other property received in the partition, the lots sued for. To this mortgage, *M. J. Beauregard* was a party, though he did not appear in person, but acted through an attorney.

In 1817, *Felicité Perez* died, and in August of that year an inventory of her succession was made, in which the lots sued for were included. *Manuel J. Beauregard* to whom, as is alleged, the same property had been previously sold, acting as one of the appraisers.

The debt to *Carraby* not having been paid, he obtained, on the 24th of April, 1818, an order of seizure against the property. After the seizure, but before the sale, the sums due by two of the co-heirs, *M. J. & B. J. Beauregard* were paid, and as to them, the seizure was dismissed; but with respect to the heirs of *Perez*, it was carried on, and the lots in controversy were, on the 19th of October, 1820, adjudicated to *Louis Dubreuil*, *Manuel J. Beauregard* being, as his brother and partner *B. J. Beauregard* deposes, present at the sale and acquainted with the circumstances of the mortgage.

On the 1st of June, 1822, *Dubrueil* transferred the said lots to the heirs of *Felicité Perez*, (of whom the plaintiff is the sole survivor and heir,) in whose possession the property has been since that time, until the disturbance complained of in 1851.

It may be added, that *Manuel J. Beauregard* never took actual possession under the sale from *Felicité Perez*, and that he lived and died in Baton Rouge, having only been absent from that place about six months, in the year 1827, during which time he resided in New Orleans.

It further appears, that *J. B. Beauregard*, as the agent of the heirs of *Feli-*

*cité Perez*, enclosed and held for them the lots in question for about twenty years, and that they were, with his permission as agent, held and used by another, for seven years afterward, until the fences rotted down, since which time they remained vacant until enclosed by defendant; that the sale to *Manuel J. Beauregard* was not real, no consideration having been paid by him nor delivery made ; that during his life, he never claimed to be the owner of the property, and that it was not inventoried after his death, or as belonging to his succession, nor so claimed by his heirs or legal representatives, until possession was taken by enclosure in 1831, as above stated.

On the trial, a bill of exceptions was taken to the reception of parol testimony to establish simulation in the sale from *Perez*, the ancestor of plaintiff, to *M. J. Beauregard*, and from Mrs. *Beauregard* to the defendant, until it should be made to appear that the defendant, at the time of his purchase, had been informed of all the facts going to prove that the sale from *Perez* to *M. J. Beauregard*, was without consideration.

Upon the correctness of the ruling of the court, and upon the effect to be given to the testimony, must the decision of this case chiefly rest.

It may be remarked, that on a former trial of this cause, a similar exception had been taken and sustained, and that upon an appeal, the cause was remanded. In passing on the exception by which the point was reserved, the court then said : " Whether this evidence was or was not admissible, depends upon the real character of defendant's title. If he is a purchaser in good faith, he cannot be affected by the want of consideration in the sale to *Manuel J. Beauregard*. It is enough for him that it is valid in form, and that it stands on the record of the country as the deliberate act of the vendor. If, on the other hand, as assumed by the plaintiff's counsel, and as the evidence makes it probable, he is merely acting as agent of the legal representatives of *Manuel J. Beauregard*, the evidence was clearly admissible. The object of it, was to raise one of those presumptions from which simulation is inferred."

It appeared from a recital in the deed from Mrs. *Beauregard* to defendant, that the sale was made to carry out a private agreement previously entered into between them, and the case was remanded in order that the private agreement might be produced, and the true character of the defendants title thus ascertained.

On the last trial, defendant, under an order made on plaintiff's motion, filed in court a memorandum of an agreement entered into between himself and his vendor of even date with the public act of sale. In this agreement, after reciting the sale of the six lots in controversy, and stating that they are claimed by the present plaintiff, who proposes instituting suit for their recovery, it is stipulated that defendant in his quality as purchaser, shall defend the suit, and, in case of recovery by the plaintiff, the costs and expenses shall be borne by them equally ; but if the judgment should be in his favor, that he would pay all the costs and expenses of the suit, and moreover pay her two hundred dollars and reconvey three of the lots mentioned.

This memorandum must be regarded as in the nature of a counter-letter. It gives the true character of the transaction between the defendant and his vendor, and clearly establishes notice on the part of both of them, of the claim of plaintiff. Under a fair interpretation of it, he cannot be regarded as a vendee in good faith, but rather as an agent who assumes the trouble and a part of the expense of an ungracious litigation, on condition that he be permitted to

GAYOSO
v.
DELARODIERE.

retain for his services one-half of the property in the event of his defeating a claim, which was known to exist.

Such being the relations between defendant and his pretended vendor, he occupies no better a position than she herself would, were she defendant, as the legal representative of *Manuel J. Beauregard.*

In view of these facts, we do not think the court erred in receiving parol evidence to establish that no price was paid, or such other facts as would raise presumptions from which simulation might be inferred; for it is well established that, simulation like fraud, may be proved by presumption.

It is proper here to remark, that in the reference which we have made to the ruling of our predecessors, when this case was reviewed by them, we do not wish to be considered as assenting to the doctrine of the admissibility of parol testimony in cases of simulation, to the full extent assumed by them.

The rule we think is laid down too broadly, and we do not wish to be considered as assenting to it, but I state it, rather as a part of the history of the case, than as authority; preferring to place the reception of the testimony on the ground that defendants did not object to the introduction of parol evidence *in toto*, but only, that it was inadmissible, *until* it *should first* be made to appear that the defendant, at the time of his purchase, had been informed of the want of consideration in the sale to *Beauregard*, as above stated, and that it is neither alleged or suggested, or offered to be proved, that the simulation was made to defraud creditors.

The testimony leaves no doubt on our minds, that the sale from Mrs. *Perez* to her brother, *M. J. Beauregard*, was not real and serious. All the facts proved tend to this conclusion, and are inconsistent with any other. *Beauregard* never having taken possession of the property sold, was, in itself, a badge of simulation, and deprives the contract of one of the essential characteristics of a sale, (*P. & A. Collins* v. *Pellerin*, 5 An. 99,) and when to this we add the fact, that though he resided constantly, for many years before his death, at Baton Rouge, without claiming the property—that he permitted Mrs. *Perez* to mortgage it without objection, it being proved that he had knowledge of the mortgage and joined in it, this fact, coupled with the fact of his having appraised the property under oath, and having signed the inventory, would certainly have estopped him from disposing of the title of Mrs. *Perez*, and may be regarded as written evidence, tending to prove simulation. That he, after her death, suffered it to be inventoried as forming part of her succession, he himself acting as a sworn appraiser. That he subsequently permitted it to be sold as the property of Mrs. *Perez*, to whom it had been allotted in a partition, to which he was himself a party, furnishes to our minds, irresistable proof that the sale to him was simulated and not real. The facts enumerated would have estopped him from claiming under the sale, and his legal representatives occupy no better position.

The judgment of the District Court was in favor of plaintiff, declaring her to be the owner of the lots sued for, and restoring her to the possession of them, which judgment we affirm, with costs of both courts.