BREAUX, C. J.
Horace Chatman sold the undivided half of a lot of ground, situated in this city, to Sophie Chatman, wife of Murray Bundy, for $600 cash on the 13th day ■of February, 1894. On the 24th of July following, he sold two lots of ground to Murray Bundy, all three lots in New Orleans. The last he sold for $150.
He must have regretted to have made these sales, the first to his daughter, and the ■other to his son-in-law; for, on the 2d day of February, 1907, he brought suit against Sophie Chatman, his daughter, and against his granddaughter, Olivia Bundy (Murray Bundy died in 1901, and, for that reason, the ■surviving daughter of Murray Bundy was made party defendant), for judgment annulling the sales, and, in addition, for judgment in the sum of $520.
In his petition to annul these sales, he represented that he never received any consideration for these sales; that they were made for convenience, and were simulated; that he retained possession of the Orleans street property (one of the properties sold by him) up to within six months ago, when Sophie Bundy, his daughter, took possession of a portion of the property. One of the lots was taken possession of a short time before the suit was brought, and the remaining property was in his vendors’ possession.
The defendants set up their respective titles, and claim that they have paid, if not cash, as stated in the deeds they paid, a consideration, from time to time, which was equivalent to the price.
Plaintiff propounded interrogatories to Sophie Bundy, which he made part of his petition, and which she answered, and stated that she had paid for the property; and she also testified, in answer to interrogatories propounded, that her son-in-law, Mr. Bundy, and she paid for the property. She also explained why it. was that her father had remained in possession of part of the property.
After the interrogatories had been answered, plaintiff, Horace Chatman, departed this life, and his widow and testamentary executrix made herself party to the suit, reiterating his allegations and making other averments on her account. She claims that her late husband had received amounts for which he was liable, and which are secured by privilege and mortgage on the property involved in this suit. The claim on the part of the executrix is not sustained by the facts.
The parties, Horace Chatman and his daughter, Sophie Bundy, were in account with each other. At the date of the death of the latter’s mother, plaintiff retained the whole property, as he owned one half and had the usufruct of the other half. Years ago he became the husband of Clementine, the present plaintiff, and continued in his possession of half of- the property as usufructuary, although he had lost the usufruct by second marriage. In their different dealings, beyond question, according to the testimony, amounts were paid by the daughter to the father on account of the sale, and he, in addition,, collected amounts for which he owed an accounting to his daughter.
[1] Considering that interrogatories were *161 propounded to the daughter, as before stated, to her answers should he given some weighty After weighing the testimony, we arrived at the conclusion that the least that can be held is that the sale was not a simulation. One of the present plaintiff’s contentions is that the father remained in possession after the sale; that this gave rise to the presumption that the sale was simulated; also that, as it was a transaction between father and daughter, that also gave rise to a presumption of simulation.
While there is presumption growing out of the continued possession and out of the close relationship of vendor and vendee, it is a presumption which is subject to an explanation, and which can be rebutted. This, we consider, has been done, as it is conclusively proven that amounts were received on account.
Our learned Brother of the district court thought that in the accounting, if an accounting were made, it would result in proving that the succession of Horace Chatman is indebted to his daughter, the defendant. Be that as it may, it appears that an amount was paid; although if small, it would be sufficient to sustain the sale as not simulated. The presumption of simulation is overcome by proof.
Regarding the inability of the son-in-law, who died in 1901, to pay any part of the purchase price, witnesses, among them the present plaintiff, testified that he earned $10 per wheels. An economical workman may, on this limited amount, economize enough to pay something on property bought for $150.
[2] There is good ground of estoppel. During years, according to their own understanding, these parties have permitted a condition of ownership to remain which we do not think we should set aside on the evidence adduced.
For reasons stated, the judgment is affirmed.