No. 3865

**Second Circuit**

**(Second Division)**

———

**ROBBINS v. MARTIN ET AL.**

———

(December 9, 1931. Opinion and Decree.)

———

Drew & Richardson, of Minden, attorneys for plaintiff, appellant.

R. L. Benoit, of Shreveport, and R. F. Langston, of Minden, attorneys for defendants, appellees.

STEPHENS, J. Plaintiff sues to annul and have canceled from the conveyance records certain instruments transferring mineral rights on the grounds of fraud and misrepresentation, and in the alternative, if the transactions be determined to be not fraudulent, he seeks avoidance of the sales for failure of the consideration of the original contract in which he was the vendor.

The defendants E. G. Martin and James J. McClelland filed pleas of estoppel in bar of plaintiff's suit. The district court overruled the plea of Martin, but sustained the plea of McClelland and dismissed the suit in so far as it was against him. The plaintiff prosecutes this appeal from that judgment.

The following facts were developed on the trial of the pleas of estoppel:

The plaintiff acquired the fee-simple title

to the property, an interest in which is in dispute, by deeds from G. W. Coyle and the Bank of Cotton Valley, in the years 1922 and 1923, respectively. Thereafter, he leased said land for the production of oil and gas therefrom, reserving the customary one-eighth royalty, and then executed mineral deeds in the years 1923 and 1924 to B. H. Vaughn, for a one-half mineral interest; to B. H. Vaughn for a one-quarter mineral interest; to J. S. Belcher for a one-eighth mineral interest, and to J. S. Belcher for a one-sixteenth mineral interest, leaving to plaintiff, on March 29, 1926, a one-sixteenth mineral interest subject to the lease or the interest popularly designated as a one-one-twenty-eighth royalty interest. He then executed to defendant Martin a mineral deed conveying "an undivided one-half of all the oil, gas and other minerals, now owned by me" (subject to the lease), or a one-thirty-second mineral interest, subject to the lease, or the interest popularly designated as a one-two-hundred-fifty-sixth royalty interest, leaving plaintiff the owner of a fractional interest equal to the interest conveyed to Martin. Mineral deeds from Martin to Coyle and from Coyle to Worley and from Worley to McClelland followed, all conveying the same mineral interest acquired by Martin from Robbins; the deed from Worley to McClelland being dated April 23, 1928.

On March 19, 1926, the defendant McClelland had acquired a three-two-hundred-fifty-sixth royalty interest in this same property under a different chain of title. Oil was discovered on the land about April, 1926.

The Standard Oil Company of Louisiana purchased the oil from the tract beginning April, 1926, and ending December 24, 1926. In response to a request from said company, the mineral owners executed a "division order" and it was signed by plaintiff on April 1, 1926. This order was in the form of an agreement in writing authorizing connections to be made and the oil to be run and designating the extent of the ownership of the several mineral owners and providing for payment for oil to be made in accordance with the division of ownership shown therein. The plaintiff specifically agreed and acknowledged that he was the owner of the one-two-hundred-fifty-sixth royalty interest left to him after the execution of all mineral deeds by him, including the deed from him to Martin which he now seeks to set aside; and that the defendant McClelland was the owner of the three-two-hundred-fifty-sixth royalty interest previously acquired by him and above referred to through another chain of title; and that the defendant Martin was the owner of the one-two-hundred-fifty-sixth royalty interest conveyed to him by the deed which he (the plaintiff herein) now seeks to set aside. The pipe line company, pursuant to said division order, purchased the oil produced from the property through December 24, 1926, and during that time remitted to plaintiff by check, monthly, for his proportionate part of the oil, and each royalty check paid to plaintiff was accepted by him and was accompanied by a production statement showing the interest owned by each royalty owner, and the barrels of oil and the value thereof credited to each owner, which statements showed that defendant Martin owned the one-two-hundred-fifty-sixth royalty interest which he had purchased from plaintiff and stated that plaintiff owned only the interest left to him after the sale to Martin, i. e., a one-two-hundred-fifty-sixth royalty interest. The plaintiff, during this ten months' peri-

od, received such checks and statements, and accepted same without any protest or complaint, or without asserting any invalidity in the mineral deed which he now seeks to set aside, and during this same time statements identical in form and contents accompanying royalty checks were sent by the pipe line company to the defendant McClelland by virtue of his royalty ownership under the previous purchase.

The Standard Oil Company of Louisiana disconnected from this property about December 29, 1926, and thereafter the Magnolia Petroleum Company began purchasing the oil. A similar division order was signed by plaintiff for the same purpose, and with the same acknowledgment, setting forth the same division of ownership. The Magnolia Petroleum Company, pursuant to this division order, purchased the oil from this land from about the date above set forth up to the time of the trial of this plea, and during that period remitted to the plaintiff by check semi-monthly for the value of his one-two-hundred-fifty-sixth royalty interest. These checks were also accepted by plaintiff and each check was accompanied by a statement showing that plaintiff was the owner of and was receiving payments for only the one-two-hundred-fifty-sixth royalty interest left to him after the deed to Martin.

The mineral deeds which the plaintiff is seeking to set aside are those above referred to, affecting the northeast quarter of southwest quarter, section 21, township 21 north, range 10 west, of Webster parish, La., from him to the defendant E. G. Martin, dated March 29, 1926; from Martin to the defendant R. M. Coyle dated March 10, 1927; from Coyle to the defendant P. C. Worley dated April 12, 1928; and from Worley to the defendant McClelland dated April 23, 1928. The plaintiff alleges as a basis for his action to set aside the conveyances, fraud, duress, misrepresentation, and in the alternative that the agreed consideration in the first of these transactions was not paid and performed, and that the defendants subsequently purchasing had full knowledge of the said failure of the consideration.

The deed from the plaintiff to the defendant Martin contains the following stipulation:

"This sale and transfer is made for the consideration of the sum of Twenty-five Dollars, and the further consideration that the vendee herein shall pay for an abstract covering the said land, to be obtained from the Webster Abstract Company, and the further consideration of employing necessary counsel to file such suit or suits as may be deemed necessary to perfect title in this vendor, and to look after vendor's interest in the said property."

It is the non-fulfillment of the agreements of the foregoing stipulation which plaintiff here asserts as the basis of his alternative demand.

The plea of estoppel of the defendant McClelland is predicated upon the contention that this plaintiff, Robbins, subsequent to the execution of the mineral deed to Martin, signed the two "division orders" wherein it was agreed, declared, certified, and guaranteed by the plaintiff that Martin was the legal owner of the mineral interest plaintiff now seeks to annul, and that plaintiff was the legal owner of only the interest left to him after the sale to Martin, and that over a period of approximately four years after the sale to Martin plaintiff had received and accepted royalty checks, without protest, in payment for the interest left to him after the sale to Martin, and which checks were accompanied by statements showing Martin's

ownership of the interest plaintiff now seeks to annul, and showing that Martin (and later Martin's successor in interest) was receiving payments for oil runs to the credit of the interest plaintiff now seeks to annul, and showing that plaintiff was receiving payment for only the interest left to him after the sale to Martin; that defendant McClelland, in purchasing from defendant Worley the interest now in dispute for a cash consideration of $1,200, relied upon and was induced to make the purchase by the foregoing facts, and that plaintiff is now barred and estopped, as against the defendant McClelland, from contesting the validity of a conveyance which he has affirmatively, in writing, and by his actions, conduct and acquiescence acknowledged to be valid and which he had accepted and ratified; that plaintiff is barred and estopped from now asserting, as against defendant McClelland, that the agreements of Martin as set out in the deed to Martin have not been fulfilled because plaintiff by his signed, written agreements and declarations, and by his conduct, has acknowledged that said agreements on the part of Martin have been fulfilled, and that plaintiff Robbins is estopped and barred from now claiming, as against defendant McClelland, a greater interest in the property in question than the interest which he agreed and declared himself to be the owner of by signing the written contracts or "division orders," defendant McClelland having, in the meantime, acted in reliance upon such written agreements and declarations of plaintiff.

The mineral deeds attacked were duly recorded in the conveyance records of Webster parish, and an examination of said records by the defendant McClelland would have disclosed the peculiar and unusual stipulated consideration written into the first of those instruments. McClelland frankly testified that he would not have made the purchase if he had known of the condition in the deed.

The plaintiff rests his defense to the plea of estoppel solely upon the opinion in Brown v. Parish, 1 La. App. 246.

In our judgment there is but slight analogy between the case relied on by plaintiff and the instant case, either as to the facts or the legal doctrines presented for discussion. We have carefully read and considered the able opinion in Brown v. Parish. The writer of this opinion tried and decided that case in the district court, and is for that reason more than ordinarily familiar with the issues of fact and law involved therein.

In Brown v. Parish, the circumstance, and the only circumstance, which was attempted to be set up as an estoppel against the right of the plaintiff to cancel the lease, was that plaintiff had stated verbally that the lease involved was a five-year lease; but it will be noted that plaintiff made no statement as to whether or not the lease was subject to the requirement of being renewed each year, or as to whether or not the renewal requirement had been complied with, and the court observed that "we usually refer to leases of the tenor of this one as 'five-year leases,'" and the court further observed that "the only reasonable construction to be placed on his remarks is that the lessee had a five-year lease if he chose to exercise his option to make it such."

In the instant case the plaintiff entered into two written contracts and agreements, specifically agreeing and acknowledging that the signers of those written agreements were the owners of the property

therein described, in the proportions therein set out; that is to say, plaintiff contracted in writing with reference to the interest here involved, as he had the right to do, and by that written contract expressly and specifically represented and agreed that his interest in the property was only the interest left to him after the sale to Martin, and by that written contract he also expressly represented and agreed that Martin was the owner of the interest which plaintiff now seeks to set aside.

The pertinent provisions of the first "division order" which plaintiff signed are as follows:

"To The Standard Oil Company of Louisiana:

"We, the undersigned, and each of us, hereby declare and agree that we are the owners, in the proportions set out below, of all the oil produced from the Alabama Petroleum Co. Robbins 'B' Farm situated in NE¼ of SW¼ Section 21, Two. 21, Rng. 10, Webster Parish, Louisiana.

"We hereby authorize you to run said oil, and until further notice you will pay for all oil taken from said property as follows:
"Statement of Ownership and Order of Division.
"Charley Robbins, 1/256 R. I.
"E. G. Martin, 1/256 R. I.

"This agreement and division order shall become valid and binding on each and every owner above named as soon as signed by him or her, regardless of whether or not any of the other above named owners have so signed."

The pertinent provisions of the second division order which plaintiff signed are as follows:

"To Magnolia Petroleum Company:
"The undersigned certify and guarantee that they are the legal owners of wells numbered one and up, on the Magnolia Petroleum Company Robbins 'B' Farm, more particularly described as the NE¼ of SW¼ of Section 21, Twp. 21 N. Rng. 10 West, Webster Parish, Louisiana, and until further notice you are hereby authorized to receive oil therefrom, giving credit as directed below:

| Credit To | Division of Interest |
|---|---|
| Charley Robbins | 3/768 R. I. |
| E. G. Martin | 3/768 R. I." |

In Brown v. Parish, the court stated that the character of the estoppel considered was equitable estoppel or estoppel "in pais," and the decision is predicated upon, and quotes with approval, the text from 16 Cyc. p. 738; whereas, we find from a further inspection of that same work (now Corpus Juris, vol. 21), on page 1110, under the heading "Estoppel by Simple Contract," the following:

"There are two sorts of what is termed 'Estoppel by Contract,' namely, (1) estoppel to deny the truth of facts agreed upon and settled by force of entering into the contract, and (2) estoppel arising from acts done under or in performance of the contract. The first form of estoppel, if the contract is in writing, is analogous to certain phases of estoppel by deed, and is not in strict propriety a species of estoppel in pais, since it is wholly based on a written instrument."

And further in this connection, on page 1111 of the same work:

"If in making a contract the parties agree upon or assume the existence of a particular fact as the basis of their negotiations, they are estopped to deny the fact so long as the contract stands in the absence of fraud, accident or mistake."

In support of the text the following is cited:

"Estoppel by contract" is a term which is intended to embrace all cases in which there is an actual or virtual undertaking to treat a fact as settled, as for example, a contract based upon one's having asserted title to property will estop the parties,

in the performance of the contract, from claiming a different title. Bigelow, Estoppel, (5th Ed.) page 450, quoting Bricker v. Stroud, 56 Mo. App. 183, 188.

In Brown v. Parish, the following is quoted from 16 Cyc. (now Corpus Juris, vol. 21) p. 738:

"As a corollary to the proposition that the party setting up an estoppel must have acted in reliance upon the conduct and representations of the party sought to be estopped, it is as a general rule essential that the former should not only have been destitute of knowledge of the real facts as to the matter in controversy, but should also have been without convenient or ready means of acquiring such knowledge.

"A public record is an available means of information as to questions of title, and one who does not take advantage of it can not claim an estoppel against one who merely fails to furnish such information."

In 21 Corpus Juris, p. 1131, a further reading of that text discloses:

"There are, however, cases in which the representations by actively misleading the person setting up the estoppel and preventing him from having recourse to available means of information has been held to excuse his failure to inform himself of the facts even in the case of constructive notice by matter of record."

In support of the above text is quoted the following:

"The law distinguishes between silence and encouragement and while silence may be innocent and lawful, to encourage and mislead another into expenditures on a bad or doubtful title would be a positive fraud that should bar and estop the party, the author of that encouragement and deception, from disturbing the title of the person whom he misled, by any claim of title in himself." Knouff v. Thompson, 16 Pa. 357.

Also quoting:

" "The very statement of the rule (that mere silence will not estop where information as to title is available by public record) shows that the fact that the title is of record is no justification for an act which does mislead the other party.' Olden v. Hendrick, 100 Mo. 533, 13 S. W. 821."

It is the contention of the plaintiff that the defendant McClelland was legally chargeable with notice of the conditions imposed in the deed from plaintiff to Martin, by virtue of that deed being a matter of public record at the time of his purchase; and that the defendant McClelland was negligent in not learning the nature of the unusual conditions recited in the deed. But is not plaintiff, as a consequence of his affirmative written representations and agreements signed by him after the execution of the deed stipulating those conditions acknowledging that Martin was the owner of the interest in question, estopped to assert that Martin did not comply with those conditions after McClelland, a third purchaser, had relied upon and been influenced by said written representations and agreements?

In the case of Headley v. Hoopengarner et al., 60 W. Va. 626, 55 S. E. 744, 749, the Supreme Court of West Virginia, in discussing the specific question here under consideration, quoted as authority for sustaining a plea of estoppel against one claiming a greater interest than agreed on in a division order, the following from 2 Pomeroy's Equity Jurisprudence, sec. 810:

"It has been said that, in alleged cases of estoppel by conduct affecting the title to land, the record of the real title would furnish a means by which the other party might ascertain the truth, so that he could not claim to be misled, and could not insist upon the estoppel. This conclusion * * * if correct at all, is correct only within very narrow limits, and must be ap-

plied with the greatest caution. It must be strictly confined to cases where the conduct creating the estoppel is mere silence. If the real owner resorts to any affirmative acts or words or makes any representations, it would be in the highest degree inequitable to permit him to say that the other party who had relied upon his conduct and been misled thereby might have ascertained the falsity of his representations."

The court further stated, citing Bigelow, Estoppel (5th Ed.) p. 460:

"The estoppel in this class of cases is fixed by the execution of the contract. Nothing further need be shown, where the fact in question is clearly agreed or assumed."

The courts of last resort in this state have not passed on the specific question here presented, but the courts of other and older oil-producing states have considered and disposed of the proposition. In Headley v. Hoopengarner et al., supra, it was held that one who signs a "division order" fixing and defining his interest in the oil produced and directing the delivery by the pipe line company to him of payment of that interest, as his portion, will be estopped to claim more than that interest against parties to the "division order" and their assignees.

The courts of last resort of the states of Montana and Oklahoma have held to the same effect; that is, that the signers of a "division order" with respect to each other are estopped by its provisions. Corey v. Sunburst Oil & Gas Co., 72 Mont. 383, 233 P. 909; Texas Company v. Pettit (Okl.) 220 P. 956.

These well-considered cases are highly persuasive of their correctness and have led us to the conclusion that the plea of estoppel herein urged is well founded.

While the specific question here presented has not been considered and answered by the courts of last resort of this state, there are many able opinions of those courts in which the general · principles which govern the disposition of the question have been applied. We quote the following:

"Where one by his words or conduct, willfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time." Marsh v. Smith, 5 Rob. 523; McMasters v. Atchafalaya Railroad & Banking Co., 1 La. Ann. 11; Blanchard v. Allain, 5 La. Ann. 367, 52 Am. Dec. 594; Jacobs v. Butler, 6 La. Ann. 274; Rogers v. Chandler, 6 La. Ann. 349; Burbank v. Haas, 9 La. Ann. 528; Gottschalk v. De Santos, 12 La. Ann. 473.

"One who has put another in a position in which he should not have been put is estopped from recalling the transfer, to the prejudice of third persons." Mendelsohn v. Blaise, 52 La. Ann. 1104, 27 So. 707.

"Mr. Barker, after having recognized the title of the children of his wife to the entirety of the property, by appraising it as belonging in its entirety to them, and signing the inventory of it as such, could not be allowed, as against third persons, purchasers from these heirs, to contest the title of these heirs. Gayoso v. Delaroderie, 9 La. Ann. 280." Henderson Iron Works & Supply Company v. Highouse, 141 La. 803, 75 So. 729, 730.

"Where parties to a sale have acted for a number of years as if the sale had transferred real rights, they will be estopped from denying such sale." Chatman v. Bundy, 130 La. 158, 57 So. 786.

It is our opinion that the plaintiff, by executing the two "division orders," or written agreements, acknowledging and declaring himself to be the owner of only the one-two-hundred-fifty-sixth royalty in-

terest left to him after the sale to Martin and acknowledging Martin to be the legal owner of the one-two-hundred-fifty-sixth royalty interest which Robbins ·now seeks to set aside; and by accepting, for a continuous period of almost four years, monthly and semi-monthly royalty payments made by check sent to him in payment of only the interest left to him after the sale to Martin, and which checks were accompanied by statements some of which showing not only his (Robbins') interest as only a one-two-hundred-fifty-sixth royalty interest, but also showing Martin to be the owner of the one-two-hundred-fifty-sixth royalty interest he now attacks, and that Martin was receiving payment for that interest, and others showing that Robbins owned and was being paid for only the one-two-hundred-fifty-sixth royalty interest left to him after the ·deed to Martin, and by his failure to complain or make any protest as to the interest credited to him during all of that time—is estopped from assuming and cannot now maintain a position inconsistent with his said representations and conduct to the detriment and prejudice of the defendant McClelland who had purchased the interest in good faith in reliance thereon.

We are further of the opinion that the plaintiff is without legal justification in asserting that it was the duty of the defendant McClelland to refer to the public records to ascertain the incorrectness of the affirmative representations and declarations set forth in the division orders.

For which reasons we think the judgment of the district court sustaining the plea of estoppel of the defendant McClelland and dismissing plaintiff's action at his costs is correct, and it is affirmed.