160 So. 87

### HUNTER v. SANDEL et al.

No. 33040.

Jan. 7, 1935.

Rehearing Denied March 4, 1935.

Sholars & Gunby, of Monroe, for plaintiff appellant.

Theus, Grisham, Davis & Leigh, of Monroe, for defendant appellee.

Melvin F. Johnson, of Shreveport, for Prudential Ins. Co. of America, intervener.

Robert Layton, of Monroe, for Mrs. Eugenia S. Wright, defendant appellee.

Spencer, Gidiere, Phelps & Dunbar, of New Orleans, for First Joint Stock Land Bank of New Orleans and State Life Ins. Co. of Indianapolis, interveners.

O'NIELL, Chief Justice.

Frank P. Stubbs died in 1908, leaving a large estate, composed of both real and personal property, and being mainly lands in the parishes of Ouachita, Bossier, Lincoln, and Richland. His three daughters, namely, Mrs. Georgia Stubbs Barringer, Mrs. Anna Stubbs Sandel, and Mrs. Eugenia Stubbs Wright, and a son, Frank P. Stubbs, Jr., bought the interests of the other heirs in the estate, so that, on the 2d of January, 1924, Mrs. Barringer, Mrs. Sandel, Mrs. Wright, and Frank P. Stubbs, Jr., each owned a fourth interest in the estate. On that day, Mrs. Barringer sold her fourth interest in the estate to the remaining three heirs, namely, Mrs. Sandel, Mrs. Wright, and Frank P. Stubbs, Jr., selling to each of them a twelfth interest. The question in this case is whether the language of the deed makes it certain that Mrs. Barringer did not reserve—and did not intend to reserve—the vendor's lien, which, if not waived expressly or by necessary implication, resulted by mere effect of the law, as a legal consequence of the sale. There are many collateral issues in the case, but that is the foremost question. And the reason why that question has arisen is that there is no mention of a vendor's lien in the act of sale.

The deed contains a description of each separate tract of land in each parish, and a general inclusion of Mrs. Barringer's fourth interest in all of the personal property, notes, accounts, and claims, owned by the four heirs jointly; and the deed contains this all-embracing language, viz.:

"* * * it being the intention of this vendor to sell, and of these vendees to buy, the undivided one-fourth interest of the said Mrs. Georgia S. Barringer in and to all the property of every nature and description, real, personal, and mixed, rights, claims, credits, * * * and this act of sale shall be taken, deemed and construed to divest the said Mrs. Georgia S. Barringer of all her interest, of every nature and description, in and to any and all property, of every nature and description, now owned by her jointly with these vendees. * * *"

The price and terms of the sale, as stated in the deed, were as follows:

"The price and consideration for which the above sale is made and accepted is the sum of Fifty Thousand ($50,000.00) Dollars, and the assumption by these vendees of this vendor's portion of all the debts due by the Stubbs Estate, and especially the indebtedness due the Central Savings Bank & Trust Company, and the mortgages due on Magenta, King, and Oak Grove Plantation, as well as all other indebtedness due by this vendor jointly with these

vendees, the said Fifty Thousand ($50,000.00) Dollars being paid as follows, to-wit: The sum of Three Thousand and Three Hundred and Thirty-three Dollars and thirty-three and one-third cents ($3,333.33⅓) is paid in cash by each of these vendees, the receipt whereof is hereby acknowledged by this vendor, and for the balance of Forty Thousand ($40,000.-00) Dollars each of these vendees has made and executed their separate individual promissory notes, secured by a special mortgage on their separate and individual property, as follows, to-wit: * * * "

Immediately following this statement of the price and terms, which we have quoted, and in the same deed, each of the three purchasers gave a special mortgage on his or her separate property (which was not a part of the property conveyed by the deed), to secure the payment of his or her ten promissory notes, for $1,333.33⅓ each, payable, respectively, in 1, 2, 3, 4, 5, 6, 7, 8, 9, 10 years; which notes, after being paraphed by the notary public to identify them with the act of mortgage, were delivered to Mrs. Barringer.

The mortgage which Mrs. Sandel gave, to secure the payment of her ten notes, was on lots 7 and 8 in square 20 in the Cotton Mill addition to the city of Monroe, in Ouachita parish. The reason why we refer especially to the mortgage and notes which Mrs. Sandel gave is that this suit was brought on the last four notes given by her. The ten notes given by Mrs. Wright and the ten notes given by Frank P. Stubbs, Jr., and the first six of the ten notes given by Mrs. Sandel were paid at maturity.

The deed contains also this significant paragraph:

"And the said parties hereto each severally said and declared that they have purchased the said hereinabove described property from Mrs. Georgia S. Barringer with their separate and paraphernal funds, under their separate control and for their sole and separate use and benefit, and the same shall not be part of the community existing between them and their respective wives and husbands, and that all of the considerations herein paid are with their separate and paraphernal funds and property under their separate control."

On the 2d of January, 1924, after Mrs. Sandel and Mrs. Wright and F. P. Stubbs, Jr., had become the sole owners of the Stubbs estate, they divided the several tracts of land among them; each taking his or her part of the lands in full ownership.

The seventh of the series of ten notes signed by Mrs. Sandel was transferred to the Central Savings Bank & Trust Company by Mrs. Barringer on the day it was issued. That note and the eighth, ninth, and tenth notes, signed by Mrs. Sandel, were acquired by S. D. Hunter, plaintiff in this suit, in June, 1933, which was after the maturity of the seventh, eighth, and ninth note, but before maturity of the tenth note. Frank P. Stubbs, Jr., died before this suit arose. The suit was brought against Mrs. Sandel, Mrs. Wright, and the heirs and executors of the deceased Frank P. Stubbs, Jr. The plaintiff, S. D. Hunter, prayed for and obtained a judgment against Mrs. Sandel for the amount of the four notes, with interest and attorneys' fees, and with recognition of the special mortgage on lots 7 and 8 of square 20 in the Cotton Mill addition to the city of Monroe. There is no appeal from the judgment in that respect. But the plaintiff

claimed also a vendor's lien on the undivided fourth interest which Mrs. Barringer sold to Mrs. Sandel and Mrs. Wright and Frank P. Stubbs, Jr., in the Stubbs estate, on the 2d of January, 1924. The demand for recognition of a vendor's lien was opposed by the defendants, and was rejected by the decree of the district court; and from that decree the plaintiff, S. D. Hunter, has appealed.

The State Life Insurance Company of Indianapolis, having a special mortgage on certain lands which were acquired by Mrs. Wright in the division of the Stubbs estate, securing a loan of $15,000, which the insurance company had made to Mrs. Wright, filed a petition of intervention in this suit, and denied that Mrs. Barringer reserved a vendor's lien on the fourth interest which she sold to the coheirs in the Stubbs estate on the 2d of January, 1924.

The First Joint Stock Land Bank, of New Orleans, having a special mortgage on other lands which were acquired by Mrs. Wright in the division of the Stubbs estate, securing a loan of $35,000, which the bank had made to Mrs. Wright, filed a petition of intervention in this suit, and denied that Mrs. Barringer reserved a vendor's lien on the fourth interest which she sold to the coheirs in the Stubbs estate on the 2d of January, 1924.

The Prudential Insurance Company of America, having a special mortgage on a tract of land which was acquired by Mrs. Sandel in the division of the Stubbs estate, securing a loan of $15,000, which the insurance company had made to Mrs. Sandel, filed a petition of intervention in this suit, and denied that Mrs. Barringer reserved a vendor's lien on the fourth interest which she sold to the coheirs

in the Stubbs estate on the 2d of January, 1924.

It was alleged in the petition of intervention of the State Life Insurance Company of Indianapolis, and in the petition of intervention of the First Joint Stock Land Bank, that Mrs. Barringer, on the 21st of March, 1925, signed a notarial act, saying that, as to the land which Mrs. Wright had mortgaged to the State Life Insurance Company of Indianapolis, and as to the land which Mrs. Wright had mortgaged to the First Joint Stock Land Bank, Mrs. Barringer waived and relinquished her right to a rescission of the act of sale dated the 2d of January, 1924, "and any vendor's lien thereby created." A copy of the alleged waiver was annexed to the petition of intervention of the First Joint Stock Land Bank, with a certificate of registry in the conveyance and mortgage records of Ouachita parish. On the trial of this case, the fact that Mrs. Barringer had signed the alleged waiver was admitted by counsel for the plaintiff, S. D. Hunter. Hence it is conceded that Hunter has not a vendor's lien on the land which Mrs. Wright mortgaged to the State Life Insurance Company of Indianapolis, or on the land which she mortgaged to the First Joint Stock Land Bank. The interveners, however, have appealed from the judgment of the district court in so far as it purports to dismiss their demands for recognition of their special mortgages. We would not consider it necessary to amend the judgment in that respect, except for the fact that the interveners prayed for recognition of their mortgages, and hence a dismissal of their demands to that extent might have an unfavorable consequence, not intended. The judgment in that respect reads: "It is further ordered that the de-

mands of all interveners herein be dismissed, except to the extent of rejection of plaintiff's demand for recognition of vendor's lien." During the argument of the case on appeal, therefore, counsel for the plaintiff, S. D. Hunter, declared that there was no objection to the amendment asked for by the interveners, provided it should not impose upon Hunter the costs of the appeals of the interveners. We find that there are no such additional costs of appeal, because, by agreement of all of the parties, the transcript filed by Hunter served the purposes of all of the appellants.

### Opinion.

■■ There is no dispute about the law on the question at issue. The vendor's lien is a concomitant of the act of sale, and is a legal consequence of the sale, without any necessity for its being expressly reserved. That is because the obligations of a contract extend beyond what is expressly stipulated and to everything that is by law made an incident of the contract. Civ. Code, art. 1903. The vendor's lien may be waived or renounced, of course, but the waiver or renunciation is never presumed, and, being against a legal presumption, must be established either by an express stipulation or by a plain and cogent inference from the language used by the parties to the sale. Boner v. Mahle, 3 La. Ann. 600; Bacchus v. Moreau, 4 La. Ann. 313; Rogers v. Chandler, 6 La. Ann. 349; Sam Smith & Co. v. City of New Orleans, 27 La. Ann. 286; Baker v. Frellsen, 32 La. Ann. 822, on rehearing 32 La. Ann. 828, 829; De L'Isle v. Succession of Moss, 34 La. Ann. 164, 167; Adler & Co. v. Burton Lumber Co., 46 La. Ann. 379, 15 So. 156.

■ A decision of this case, therefore, depends entirely upon a true and correct interpretation of the language of the contract itself. Reading it in the light of the surrounding circumstances, and the motives of the parties, as disclosed by the deed itself, we are convinced that Mrs. Barringer did not intend to reserve, and in fact did not reserve, but on the contrary intended to waive, and did in fact waive, the vendor's lien on the fourth interest which she sold to her brother and sisters, in the estate of their deceased father. In the first place, the vendees made very plain their determination that the obligation of each one of them should be a separate and independent obligation, not even a joint obligation, much less a solidary obligation. If a vendor's lien had been reserved on the fourth interest which Mrs. Barringer sold to her brother and sisters, in the estate, the obligation of each one of the vendees would have been a solidary obligation, to the extent that the lien securing the payment of the obligation of each one of them would have affected the twelfth interest sold to each of the others, in the estate. To put it another way, the one-fourth interest which Mrs. Barringer sold, and which would have been affected by the vendor's lien, was composed of the one-twelfth which was sold to Mrs. Sandel, and the one-twelfth which was sold to Mrs. Wright, and the one-twelfth which was sold to Frank P. Stubbs, Jr., so that a foreclosure of the vendor's lien on the one-twelfth interest sold to any one of them would have been a foreclosure on the one-twelfth of the whole estate— belonging to all of them. It was to avoid such a solidary obligation, in rem, so to speak, that the mortgage notes of each one of the three vendees, in addition to the cash portion

of the price of the one-twelfth interest sold to each one of them, were given in discharge of the debt due for the purchase price—and hence in substitution of the vendor's lien. That idea is expressed in the terms of payment of the $50,000.00, viz.: "the said Fifty Thousand ($50,000.00) Dollars being paid as follows," etc. When a sale is made on terms of credit, the expression is that the price is "paid and payable as follows," or that it is "paid and to be paid as follows," etc. But, in this instance, the price was said to be "paid as follows," etc. And then follows the declaration that each one of the three vendees has paid $3,333.33⅓ in cash, and has given his or her ten promissory notes for $1,333.33⅓ each, secured by a special mortgage on his or her separate and individual property, not a part of the property conveyed by the deed. And in each one of the three acts of mortgage, embraced in the one deed, is the declaration that the ten promissory notes for $1,333.33⅓ have been paraphed to identify them "with this act of mortgage"—not with the act of sale, creating a vendor's lien, but "with this act of mortgage." And in each act of mortgage is the usual stipulation that the mortgagor shall not alienate, deteriorate, or encumber the mortgaged property "to the prejudice of this mortgage," and the stipulation that the mortgagor shall keep the buildings on the mortgaged property insured, etc. There is no such stipulation with regard to the property of which Mrs. Barringer sold her fourth interest. And, finally, there is the stipulation in the deed that each one of the vendees bought his or her one-twelfth interest in the estate with his or her separate and individual funds, and for his or her separate use and benefit, "and that the considerations herein paid are with their separate and paraphernal funds and property," etc. Here is the repetition that the price or consideration for each vendee's one-twelfth interest was "paid"—not payable, but paid—with the separate "funds and property" of each vendee; the separate funds being the $3,333.33⅓ cash, and the separate property being the ten mortgage notes of each vendee.

Another fact which strongly indicates that the parties to this deed did not intend that Mrs. Barringer should reserve a vendor's lien on the one-fourth interest in the Stubbs estate is that the deed, which contained also three special mortgages on property not conveyed by the deed, was recorded in the mortgage record, as well as in the conveyance record, only in the parish of Ouachita, where all of the property specially mortgaged was situated, and was recorded only in the conveyance records of the three other parishes in which the lands of which one-fourth interest was sold were situated. If Mrs. Barringer had intended to reserve a vendor's lien on the one-fourth interest which she sold, in the lands situated in four parishes, she would have recorded the deed in the mortgage records, as well as in the conveyance records, of all four parishes. There is a strong indication, therefore, that the purpose of recording the deed in the mortgage record of Ouachita parish, as well as in the conveyance record of that parish, was to preserve, not a vendor's lien on the one-fourth interest which was sold, in lands in four parishes, but the special mortgages which were stipulated in the deed, on lands situated only in Ouachita parish. It is true that the registering of the deed was not a part of the deed itself, but it was a part of the whole transaction by which Mrs. Barringer intended that she should be secure in

the payment of the price for the property which she sold. Besides, the recording of the contract, in the manner in which it was recorded, comes within the rule for the interpretation of contracts, stated in article 1956 of the Civil Code, that the construction put upon a contract, by the manner in which it has been executed by the parties, or by one of them with the assent of the other, furnishes a rule for its interpretation. Our opinion, however, is that the language of the contract itself, in this instance, leaves no doubt whatever that Mrs. Barringer did not intend to reserve, and in fact did not reserve, but on the contrary intended to waive, and did in fact waive, the vendor's lien on the one-fourth interest which she sold to her brother and sisters, in the estate of their deceased father.

Counsel for S. D. Hunter argue that the fact that Mrs. Barringer, on the 21st of March, 1925, signed a waiver and renunciation of any vendor's lien that she might have had on the land which Mrs. Wright mortgaged to the State Life Insurance Company of Indianapolis, and on the land which Mrs. Wright mortgaged to the First Joint Land Bank, is evidence that Mrs. Barringer believed that she had a vendor's lien on these lands. But the tenor of the instrument itself does not give that impression. A photostatic copy of the original instrument is in the record. As it was originally typewritten, the instrument purported to be a waiver and relinquishment of Mrs. Barringer's right to a rescission of the sale dated the 2d day of January, 1924. The words "and any vendor's lien thereby created" were interlined with a pen, as if that was an afterthought of the party obtaining the waiver and relinquishment. We do not doubt—in fact, the record shows—that the interlineation was made before Mrs. Barringer signed the instrument; but the fact that the waiver of "any vendor's lien thereby created" was interlined after the instrument was written conveys the impression that the waiver of a vendor's lien was not originally intended, or thought of. Considering that Mrs. Barringer did not receive any consideration for the waiver, and considering that she did not waive "the vendor's lien," but merely waived "any vendor's lien" that she might have had, our opinion is that she did not believe that she had "any vendor's lien." The interlineation, evidently, was made merely as a precaution on the part of the attorney representing the State Life Insurance Company of Indianapolis or the First Joint Land Bank, of New Orleans.

### Decree.

The judgment appealed from is amended so as to recognize the special mortgages held by each of the interveners, and as thus amended the judgment is affirmed, at the cost of the plaintiff and appellant.